# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA and the States of CALIFORNIA, CONNECTICUT, FLORIDA, ILLINOIS, MASSACHUSETTS, MICHIGAN, NEW YORK, RHODE ISLAND, and TEXAS, and the Government of PUERTO RICO,** *ex rel.* **MSP WB, LLC and MICHAEL ANGELO,**

   **Qui Tam Relators-Appellants,**

v.

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, ALLSTATE INDEMNITY CO., ALLSTATE INSURANCE COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE NEW JERSEY PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE NORTHBROOK INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE TEXAS LLOYDS, ALLSTATE VEHICLE & PROPERTY INSURANCE COMPANY, CASTLE KEY INDEMNITY COMPANY, CASTLE KEY INSURANCE COMPANY, ENCOMPASS HOME & AUTO INSURANCE COMPANY, ENCOMPASS INDEMNITY, ENCOMPASS INDEPENDENT INSURANCE COMPANY, ENCOMPASS INSURANCE COMPANY, ENCOMPASS INSURANCE COMPANY OF AMERICA, ENCOMPASS INSURANCE COMPANY OF MASSACHUSETTS, ENCOMPASS INSURANCE COMPANY OF NEW JERSEY, ENCOMPASS PROPERTY & CASUALTY COMPANY, ENCOMPASS PROPERTY & CASUALTY INSURANCE COMPANY OF NEW JERSEY, ESURANCE INSURANCE COMPANY, ESURANCE INSURANCE COMPANY OF NEW JERSEY, ESURANCE PROPERTY & CASUALTY INSURANCE COMPANY, FIRST COLONIAL INSURANCE COMPANY, NORTH LIGHT SPECIALTY INSURANCE COMPANY, ENCOMPASS FLORIDIAN INDEMNITY**

COMPANY, ENCOMPASS FLORIDIAN INSURANCE COMPANY AND INSURANCE SERVICES OFFICE, INC.

   **Defendants-Appellees.**

---

On Appeal from the United States District Court
for Eastern District of Michigan, Southern Division
Hon. Stephen J. Murphy, III
LT Case No. Case No. 2:19-cv-11615

---

**OPENING BRIEF OF APPELLANTS**

---

SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
AKEEL & VALENTINE, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com

John W. Cleary (Fla. Bar No. 118137)
Ryan H. Susman, (Fla. Bar No. 1010444)
MSP RECOVERY LAW FIRM
2701 S. Le Jeune Road, 10th Floor
Coral Gables, Florida 33134
Telephone: (305) 614-2222
jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

J. Alfredo Armas (Fla. Bar. No. 360708)
ARMAS BERTRAN ZINCONE
2701 South LeJeune Road

Tenth Floor
Coral Gables, Florida 33134
Telephone: 305-461-5100
E-Mail: alfred@armaslaw.com

Counsels for Relators-Appellant

**ORAL ARGUMENT REQUESTED**

**No. 23-1196**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA, et al.,**

**Qui Tam Relators-Appellants,**

**v.**

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.,**

**Defendants-Appellees**

**6th Cir. R. 26.1 CORPORATE DISCLOSURE STATEMENT**

Appellants, pursuant to 6th Cir. Rule 26.1, makes the following disclosure:

1.     Is said party a subsidiary or affiliate of a publicly owned company?

Yes.  MSP WB, LLC is wholly owned by MSP Recovery, Inc.

2.     Is there a publicly owned corporation, not a party to the appeal that has a financial interest in the outcome?

Yes.  MSP Recovery, Inc.

Dated: June 15, 2023                    Respectfully submitted,

                                                  By:     /s/ Shereef H. Akeel
                                                            Shereef H. Akeel

Adam S. Akeel
Samuel R. Simkins
Akeel & Valentine, PLC
888 West Big Beaver Road, Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com

John W. Cleary
Ryan H. Susman,
MSP RECOVERY LAW FIRM
2701 S. Le Jeune Road, 10th Floor
Coral Gables, Florida 33134
Telephone: (305) 614-2222
jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

J. Alfredo Armas
Armas Bertran Zincone
2701 South LeJeune Road
Tenth Floor
Coral Gables, Florida 33134
Telephone: 305-461-5100
E-Mail: alfred@armaslaw.com

# TABLE OF CONTENTS

**STATEMENT REGARDING ORAL ARGUMENT** ...................................... xi
**STATEMENT OF ISSUES FOR REVIEW** ......................................... 13
**STATEMENT OF THE CASE AND FACTS** ....................................... 14
**STANDARD OF REVIEW** ...................................................... 21
**SUMMARY OF THE ARGUMENT** ............................................... 21
**ARGUMENT** ................................................................ 26

I.   THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DISMISSING COUNT I WHERE NEITHER PUTATIVE PUBLIC DISCLOSURE IS SUBSTANTIALLY THE SAME AS THE REVERSE FALSE CLAIM ALLEGED BY RELATORS .................. 26

II.  THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DETERMINING RELATOR MSP WB IS NOT AN ORIGINAL SOURCE RELYING ON PRE-PPACA CASE LAW..... 43

III. THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DISMISSING COUNT II WITHOUT LEAVE TO AMEND AND WHERE AMENDMENT WOULD NOT BE FUTILE ................................................................ 49

IV.  THE DISTRICT COURT COMMITTED HARMFUL, REVERSIBLE ERROR IN REFUSING TO GRANT LEAVE TO AMEND WHERE THE RELATORS' PLEADING HAD NOT BEEN PREVIOUSLY TESTED AND WHERE THE RELATORS PROFFERED A THIRD AMENDED COMPLAINT THAT STATES A VIABLE CAUSE OF ACTION ..................................................... 56

# TABLE OF AUTHORITIES

Page(s)

Cases

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) .......................................................................... 51, 54
*Bell Atl. Corp. v. Twombly*,
 550 U.S. 544 (2007) .......................................................................... 51, 54
*Bio-Med. Applications of Tenn. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*,
 656 F.3d 277 (6th Cir. 2011) ............................................................ 17, 18
*Foman v. Davis*,
 371 U.S. 178 (1962) .......................................................................... 58, 62
*Fritz v. Charter Twp. of Comstock*,
 592 F.3d 718 (6th Cir. 2010) .................................................................. 15
*Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*,
 832 F.3d 1229 (11th Cir. 2016) .............................................................. 34
*Keys v. Humana, Inc.*,
 684 F.3d 605 (6th Cir. 2012) .................................................................. 56
*Leveski v. ITT Educ. Servs., Inc.*,
 719 F.3d 818 (7th Cir. 2013) ................................................... 25, 36, 38
*Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*,
 276 F.3d 1032 (8th Cir. 2002) ................................................ 36, 38, 39
*MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*,
 974 F.3d 1305 (11th Cir. 2020) .............................................. 15, 16, 23
*MSP Recovery, LLC v. Allstate Ins. Co.*,
 835 F.3d 1351 (11th Cir. 2016) .............................................................. 16
*MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,
 950 F.3d 764 (11th Cir. 2020) ........................................................ 33, 34
*Newberry v. Silverman*,
 789 F.3d 636 (6th Cir. 2015) .......................................................... Passim
*Schindler Elevator Corp. v. U.S. ex rel. Kirk*,
 563 U.S. 401 (2011) ...................................................................... 36, 37
*U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*,
 816 F.3d 428 (6th Cir. 2016) .................................................................. 45
*U.S. ex rel. Antoon v. Cleveland Clinic Found.*,
 788 F.3d 605 (6th Cir. 2015) .................................................................. 40
*U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
 501 F.3d 493 (6th Cir. 2007) .................................................................. 51

*U.S. ex rel. Boothe v. Sun Healthcare Group, Inc.*,
496 F.3d 1169 (10th Cir. 2007).........................................50

*U.S. ex rel. Dunn v. Procarent, Inc.*,
2022 WL 2834685 (W.D. Ky. July 20, 2022) .........................57

*U.S. ex rel. Fine v. Advanced Scis., Inc.*,
99 F.3d 1000 (10th Cir. 1996)...................................Passim

*U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*,
680 F.3d 933 (7th Cir. 2012)..........................36, 37, 44

*U.S. ex rel. Griffith v. Conn*,
117 F. Supp. 3d 961 (E.D. Ky. 2015) ...............................57

*U.S. ex rel. Harper v. Muskingum Watershed Conserv. Dist.*,
842 F.3d 430 (6th Cir. 2016)..........................................22

*U.S. ex rel Holloway v. Heartland Hospice, Inc.*,
960 F.3d 836 (6th Cir. 2020)...................................42, 43

*U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
874 F.3d 905 (6th Cir. 2017)..........................................51

*U.S. ex rel. Martin v. Life Care Centers of Am., Inc.*,
114 F. Supp. 3d 549 (E.D. Tenn. 2014) ............................51

*U.S. ex rel. Mateski v. Raytheon*,
*816 F.3d 565 (9th Cir. 2016)* ........................................36

*U.S. ex rel. Maur v. Hage-Korban*,
981 F.3d 516 (6th Cir. 2020)...................................27, 49

*U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas*,
540 F.3d 1180 (10th Cir. 2008)..............................36, 37

*U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*,
812 F.3d 294 (3rd Cir. 2016) .................27, 45, 46, 47

*U.S. ex rel. Precision Co. v. Koch Indus., Inc.*,
971 F.2d 548 (10th Cir. 1992)..............................26, 45, 48

*U.S. ex rel. Rahimi v. Rite Aid Corp.*,
3 F.4th 813 (6th Cir. 2021) ..............................22, 27

*U.S. ex rel. Reed v. KeyPoint Gov't*,
923 F.3d 729 (10th Cir. 2019)..............................36, 37

*U.S. ex rel. Silingo v. WellPoint, Inc.*,
904 F.3d 667 (9th Cir. 2018)..............................55, 56

*U.S. ex rel. Spay v. CVS Caremark Corp.*,
913 F. Supp. 2d 125 (E.D. Pa. 2012) ...............................54

*U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
674 F. App'x 92 (2d Cir. 2017) .....................................41

*United States ex rel Schutte v. Supervalu Inc.*,
143 S.Ct. 1391 (2023) ................................................24

*United States v. Baxter Int'l, Inc.*,
  345 F.3d 866 (11th Cir. 2003).................................................. 16, 20, 34
*United States v. Mosley*,
  53 F.4th 947 (6th Cir. 2022) ................................................... 55, 56
*United States v. Murphy*,
  937 F.2d 1032 (6th Cir. 1991).................................................. 55, 56
*Walburn v. Lockheed Martin Corp.*,
  431 F.3d 966 (6th Cir. 2005) ................................................... 41, 42, 43

Statutes

28 U.S.C. § 1291 ...................................................................... 13
28 U.S.C. § 1331 ...................................................................... 13
28 U.S.C. § 1367(a) ................................................................... 13
31 U.S.C. 3729(a)(1)(G) ........................................................ 34, 53, 54
31 U.S.C. § 3719(a)(1)(C) .......................................................... 55
31 U.S.C. § 3729(a)(1)(A), (B) ................................................ 59, 61
31 U.S.C. § 3730(b)(5) ............................................................... 43
31 U.S.C. § 3730(e)(4)(B) (2006)......................................... 45, 46, 47, 49
31 U.S.C. §§ 3729, 3730(b) ......................................................... 13
31 U.S.C § 3729(a)(1)(A)–(B) ...................................................... 59
42 U.S.C. 1395y(b)(8)(E) ............................................................ 34
42 U.S.C. § 1395y(b)(3)(A) ..................................................... 15, 23
42 U.S.C. § 1395y(b)(8)(H) ..................................................... 17, 33
42 U.S.C. §§ 1395y(b)(2)(B)(ii), 1395w-22(a)(4) ............................. 16, 33
Pub. L. No. 110–173, 121 Stat 2492....................................... 17, 23
U.S.C. §§ 3729-3732................................................................... 13
§ 3730(e)(4)(A) ................................................................... 46, 47

Rules

Fed. R. App. P. 32(a)(5)............................................................. 65
Fed. R. App. P. 32(a)(6)............................................................. 65
Fed. R. App. P. 32(a)(7)(B)(iii) .................................................... 65
Fed. R. App. P. 32(g)(1)(C) ........................................................ 65
Fed. R. Civ. P. 9(b) ......................................................... 51, 57, 58
Fed. R. Civ. P. 15(a)(2)............................................................. 58
Fed. R. Civ. P. 59(e)................................................................. 62

Regulations

42 C.F.R. § 422.254(b)(5) ..................................................................... 61

x

## STATEMENT REGARDING ORAL ARGUMENT

Appellants respectfully request oral argument. Appellants believe that oral argument would be appropriate to clarify any factual discrepancy, and further persuade the Court as to how the District Court erred in dismissing this case.

# STATEMENT OF SUBJECT-MATTER
# AND APPELLATE JURISDICTION

Appellants MSP WB, LLC and Michael Angelo are qui tam relators below. Relators brought claims in federal court pursuant to the False Claims Act ("FCA"), U.S.C. §§ 3729-3732.[1] The United States District Court for the Eastern District of Michigan had jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 31 U.S.C. §§ 3729, 3730(b), and the District Court had supplemental jurisdiction over the claims raised pursuant to the plaintiff-states' respective false claims acts pursuant to 28 U.S.C. § 1367(a).

The District Court entered a Memorandum Opinion and Order on August 9, 2022 dismissing Count I of Plaintiffs' Amended Complaint. [District Court Order, R. 102, Page ID # 2980]. Thereafter, the District Court entered final judgment dismissing the remaining claims with prejudice [District Court Order, R. 106, Page ID # 3022; Judgment, R. 110, Page ID # 3023] and denying rehearing and leave to amend [District Court Order, R. 111, Page ID # 3423]. Relators timely filed a Notice of Appeal. [Notice of Appeal, R. 115, Page ID # 3431]. This appeal is from a final judgment disposing of all the Relators' claims. This Court has jurisdiction to review the District Court's final orders under 28 U.S.C. § 1291.

---

[1] For ease of reference, Relators attach 31 U.S.C. §§ 3729-30 to the Addendum.

# I.
## INTRODUCTION

Appellants MSP WB, LLC and Michael Angelo are *qui tam* relators in the District Court. Relators sued Allstate and its affiliates (collectively "Allstate") for intentionally underreporting their reimbursement obligations to Medicare. Relators also sued Insurance Services Office, Inc. ("ISO"), which acts as the clearing house for a vast majority of primary payers, such as Allstate, and directly reports to the Government on those primary payers' behalf, because it violated the FCA by intentionally filing false Section 111 reports, and by conspiring with Allstate to evade reimbursements for secondary payments owed to Medicare and to the states. The District Court dismissed the action with prejudice. This appeal followed in due course. [Notice of Appeal, R. 115, Page ID # 3431].

# II.
## STATEMENT OF ISSUES FOR REVIEW

1. Whether the District Court erred in applying two *qui tam* actions as prior public disclosures that are substantially similar to Relators' claims.

2. Whether, even if the two prior *qui tam* actions publicly disclosed the fraud asserted here, MSP WB is an original source because it has knowledge that is independent of and materially adds to those two *qui tam* actions.

3. Whether Relators asserted a proper count for conspiracy to defraud and if

not, whether it is clear on *de novo* review that the Second Amended Complaint cannot be saved by amendment.

## III.

## STATEMENT OF THE CASE AND FACTS

This case was disposed of on a motion to dismiss. No allegations were weighed and no facts were determined. Accordingly, the facts recited below are taken as true for the purposes of this appeal. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 720 (6th Cir. 2010); *Newberry v. Silverman*, 789 F.3d 636, 639 (6th Cir. 2015).

Relator MSP WB, LLC, is one of several affiliated entities that form a data analytics, subrogation, and third-party liability company (collectively "MSP Recovery"). [Operative Complaint, R. 41, Page ID # 1024–25]. MSP Recovery has brought suit in state and federal courts throughout the country relating to the Medicare Secondary Payer Act's ("MSPA") private cause of action (42 U.S.C. § 1395y(b)(3)(A)). [Disclosure Statement, R. 86-3, Page ID # 2160-64]. As described by one court, MSP Recovery is a "collection agenc[y] that specialize in recovering funds on behalf of various actors in the Medicare Advantage system." *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co*., 974 F.3d 1305, 1305 (11th Cir. 2020).

In 1980 Medicare was on the brink of insolvency. Congress passed the MSPA to save it. Under the MSPA Medicare would not bear the cost of medical care

covered by a "primary payer" such as a provider of workers' compensation insurance or automobile insurance. *Id.* at 1308. The MSPA prohibited Medicare from paying if "payment has been made or can reasonably be expected to be made under a workmen's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance." *MSP Recovery, LLC v. Allstate Ins. Co.*, 835 F.3d 1351, 1354 (11th Cir. 2016).

However, as a stopgap to alleviate the burden of non-payment on medical providers, Medicare can make <u>conditional</u> payments to cover a Medicare Enrollee's medical bills when the primary payer cannot reasonably be expected to make payment with respect to such item or service promptly. *Id.* at 1355. A primary payer such as Allstate is obligated to reimburse Medicare for the conditional payment within 60 days. 42 U.S.C. §§ 1395y(b)(2)(B)(ii), 1395w-22(a)(4).

Medicare's inability to discover liability for unreimbursed conditional payments is well-documented. As the Eleventh Circuit Court of Appeals put it, "[w]hen Medicare pays . . . it <u>is paying 'in the dark'</u>—it does not know, and *cannot* know, whether someone else will pay." *United States v. Baxter Int'l, Inc.*, 345 F.3d 866, 901 (11th Cir. 2003) (internal quotes omitted) (emphasis in the original). This is why Congress enacted a reporting requirement that, if complied with, would take

Medicare out of the dark and expose primary payers' liability for all unreimbursed payments.

This reporting requirement was added by Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007 ("Section 111") Pub. L. No. 110–173, 121 Stat 2492 (Dec. 29, 2007). Section 111 requires that primary payers report to the Centers for Medicare and Medicaid Services ("CMS") when they are primary. *Id*. What is more, primary payers are obligated to report Ongoing Responsibility for Medicals ("ORM").[2]

As its core business, MSP Recovery identifies violations of Section 111 and recovers unreimbursed conditional secondary payments. It uses its proprietary data analytics to do so. [Disclosure Statement, R. 86-3 Page ID # 2157]. First, MSP Recovery obtains public records such as accident or ambulance reports. Then it juxtaposes these records against health claim records to determine whether a Medicare enrollee required medical care because of an automobile accident. *Id.* The data is then analyzed to see if an automobile insurer such as Allstate was primary and responsible for payment of the medical bills. *Id.* If so, then the next step is to

_____

[2] *MMSEA Section 111 Medicare Secondary Payer Mandatory Reporting*, CMS (Jan. 31, 2020) https://www.cms.gov/files/document/mmsea-111-january-31-2020-nghp-user-guide-version-58-chapter-iii-policy-guidance.pdf. Congress specifically authorized CMS to implement the reporting requirements by "program instruction or otherwise." 42 U.S.C. § 1395y(b)(8)(H).

determine whether the automobile insurer complied with reporting obligations, submitted a Section 111 Report, and then assumed ORM. *Id.*

With regards to Allstate, MSP Recovery conducted an independent data analysis of its non-public proprietary claims data. It discovered more than 21,000 incidents where Allstate was a primary automobile insurer where a Medicare enrollee received medical care as a result of that accident. [Operative Complaint, R. 41, Page ID # 1016]. In those 21,000 instances Allstate failed to submit Section 111 reports 72% of the time:

Reported vs Not Reported to CMS

Allstate

[Operative Complaint, R. 41, Page ID # 1068].

That is to say, MSP Recovery discovered through official reports that Allstate was liable for the medical care of over 21,000 Medicare enrollees but only complied with its Section 111 reporting requirements a little over 6,200 times. [*Id*.]; *see also* [Operative Complaint Appendix "C", R. 41, Page ID#1091]. When Allstate and its affiliates do not comply with Section 111 obligations, Medicare pays for medical care that should be paid by Allstate.

In addition to the data analytics, MSP Recovery has also engaged in extensive discovery, collected and analyzed millions of documents, and has taken hundreds of depositions. [Operative Complaint, R. 41, Page ID#1024-25; 1059-60]. MSP Recovery has discovered that Allstate typically and intentionally does not ask its insured's whether they are Medicare beneficiaries. It only asks for such fundamental information as Social Security Numbers ("SSNs"), Medicare Health Insurance Claim Numbers ("HICN"), or Medicare Beneficiary Identifiers ("MBI") less than 20% of the time. [Operative Complaint, R. 41, Page ID # 1061]. MSP Recovery has discovered that Allstate refuses to obtain SSNs, the most fundamental identifier, approximately 19% of the time.

Allstate well knows that without SSNs it is impossible to determine whether an insured is a Medicare enrollee, and it is conversely impossible to determine when Allstate is a primary payer liable for ongoing medicals under the MSPA:

Q: Okay. Let's break it down, if you don't mind. The CMS query system, do you know what data able to query CMS or Medicare eligibility?

A: Well, I know we – there's various data that's sent over. But, yes, of course, the <u>five data limits that we need</u>. Of course <u>they cannot query without the Social Security number</u> and then their first/last name, date of birth, gender.

Q: You said Social Security number, first name, last name; what else?

A: Date of birth, gender, as prescribed by Medicare.

[Operative Complaint Appendix "D", R. 41, Page ID #1093]

Q: So we were discussing the number of CMS queries monthly and I had asked you whether you felt comfortable that Allstate had a system that was accurately reporting under Section 111, and you felt that you were confident that it was. So let me ask you these other questions. On how many of the claims that are received by Allstate on a yearly basis <u>does Allstate fail to acquire the Social Security number for a claimant</u>?

A: <u>We acquire it on 81 percent</u>.

[Id. at 1095].

Q: And at no time within the 22 years that you've been at Allstate, and more specifically the last two-and-a-half years, has anyone at Allstate decided or determined that it would be a good idea to capture people's Social Security numbers at the time of underwriting or their Medicare eligibility? ***

A: That's correct.

Q: As far as you're concerned, that's irrelevant?

A**:** Yes**.**

[*Id.* at 1097].

MSP Recovery has been uncovering Defendants' fraud for almost a decade. Over the course of litigation, MSP Recovery amassed an extensive body of non-public information evidencing Allstate's violations of the MSPA and Section 111 relating to traditional Medicare (Parts A & B), Medicare Advantage and state Medicaid programs. [Operative Complaint, R. 41, Page ID #1024-25]. MSP uncovered Defendants' systematic and intentional abuses of these government healthcare programs. *Id.* MSP possesses non-public data it has run through its proprietary system and added information obtained from numerous sources, including civil litigation. It has uncovered the FCA violations alleged in the Amended Qui Tam Complaint Disclosure Statement. [Disclosure Statement, R. 86-3, Page ID # 2155-56]

MSP Recovery employs I.T. personnel, accountants, statisticians, physicians, data analysts, and attorneys to identify when Primary Payers owe money to the Government. MSP Recovery has extensive knowledge of the MSPA and decades of experience in medical industry data analytics. [Operative Complaint, R. 41, Page ID #1025]. MSP Recovery works with MSP Recovery Law Firm to sue scofflaw primary payers. [*Id.*].

Claims are identified using medical liens, police reports, ambulance reports, accident reports, hospital records, medical bills, Medicare claims data, and reports filed with CMS. [*Id.*]. In addition, lawyers retained by MSP Recovery have taken

discovery in these lawsuits including depositions of insurance company executives. [*Id*.]. The upshot is that MSP Recovery has direct knowledge that Medicare and Medicaid have sustained substantial damages as a result of the violations alleged in the Second Amended Complaint. [*Id*.].

## IV.
## STANDARD OF REVIEW

This Court reviews <u>de</u> <u>novo</u> a district court's dismissal of a complaint by way of the public-disclosure bar. *U.S. ex rel. Harper v. Muskingum Watershed Conserv. Dist.*, 842 F.3d 430, 435 (6th Cir. 2016)*; U.S. ex rel. Rahimi v. Rite Aid Corp.,* 3 F.4th 813, 823 (6th Cir. 2021). Dismissal with prejudice and without leave to amend is not appropriate unless it is <u>clear on de novo</u> review that the complaint could not be saved by amendment. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015).

## V.
## SUMMARY OF THE ARGUMENT

In 1980 Medicare was on the verge of bankruptcy because it did not recover subrogation claims from other insurers. In order to save Medicare, Congress passed the MSPA which made Medicare the payer of last resort. Auto insurers like Allstate are now primary payers obligated to pay for accident-related medical expenses for Medicare enrollees.

Notwithstanding this change, Allstate ignored its primary payer obligations. Worse, Medicare was unable to determine primary payer responsibility for its enrollees' medical care unless the primary payer insurers voluntarily stepped forward to announce their primary payer responsibility. They did not. Congress then required that primary payers notify CMS every time they receive a Medicare enrollee claim. *See* Medicare, Medicaid, and SCHIP Extension Act of 2007 ("MMSEA" or "Section 111") Pub. L. No. 110–173, 121 Stat 2492 (Dec. 29, 2007). Allstate also ignores this reporting obligation and thus avoids its payment obligations to CMS. This is where MSP Recovery steps in.

MSP Recovery has brought suit in state and federal courts throughout the country relating to the MSPA's private cause of action codified at 42 U.S.C. § 1395y(b)(3)(A). MSP Recovery specializes in recovering funds on behalf of various actors in the Medicare Advantage system. *Ace*, 974 F.3d at 1305 (11th Cir. 2020).

MSP Recovery discovered that Allstate and its affiliates simply ignore the law and continue to lurk in the dark. Medicare pays in the dark and is unaware of when Allstate is a primary payer. MSP Recovery has analyzed millions of documents, developed proprietary software to determine when a Medicare enrollee received medical care resulting from an accident where an automobile insurance company is a primary payer, and then determined if the primary payer filed a Section 111 Report. MSP Recovery has discovered that Allstate fails to properly report 72% of the time,

including the specific claims alleged by Relators. This is hardly surprising since Allstate fails to obtain SSNs at underwriting 19% of the time.

Relators brought this action for reverse FCA violations because the Defendants intentionally underreport their liability as required by Section111. The District Court correctly and succinctly described this action as follows:

> Relator MSP WB allegedly has "direct knowledge of tens of thousands of instances wherein the [Defendants] failed to report their primary payer responsibility causing [G]overnment health programs to reimburse for the beneficiaries' accident-related medical expenses." And the Relators claimed that Defendants "systematic[ally] fail[ed] to completely or accurately satisfy Section 111's reporting requirements." Taken as true, the Relators establish a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements. One Relator even has "direct knowledge" of Defendants' reporting failures, and can trace Defendants to the alleged fraud. And a favorable decision would likely redress the alleged fraud injury[3].

[District Court Order, R. 102, Page ID # 2954] (citations omitted) [Emphasis added]. However, the District Court then erroneously found that two *qui tam* actions are prior public disclosures of this action.

This Court applies a three-part test to determine whether the public-disclosure bar precludes an otherwise valid FCA claim. First, it asks whether there had been a public disclosure of the fraud. If so, it assesses whether the public disclosure is

---

[3] Recently, and of note, the United States Supreme Court has lowered the bar even further for Relators to establish fraud under FCA *See United States ex rel. Schutte v. Supervalu Inc*., 143 S.Ct. 1391 (2023).

"substantially the same" as the action. It then asks whether the *qui tam* plaintiff is nevertheless an original source of the information.

The two prior cases that the District Court determined were prior disclosure bars alleged violations of the MSPA that <u>predate</u> Section 111's reporting requirements. *U.S. ex rel. Hayes v. Allstate Ins. Co.,* No. 1:12-cv-01015, ECF 21 (W.D.N.Y. Apr. 14, 2014); and *U.S. ex rel. Takemoto v. Ace Am. Ins. Co.,* No. 1:11-cv-00613, ECF 170 (W.D.N.Y. Oct. 31, 2014).

Neither *Hayes* nor *Takemoto* alleged, much less established, "a<u> fraud injury on the United States due to defendants' failure to satisfy **Section 111's** reporting requirements.</u>" This is necessarily true since Section 111 had not even been implemented when the facts transcribed in both cases occurred.

In addition, Relators allege a "more sophisticated, second-generation method of violating the [law]" that is not barred by earlier "rudimentary scheme[s]". *Leveski Leveski v. ITT Educ. Servs., Inc.*, 719 F.3d 818, 832 (7th Cir. 2013). Further, Relators make allegations related to co-conspirator—ISO, who had never been implicated publicly before—and how these co-conspirators carried out the alleged scheme to purposely underreport Allstate's primary payer status. Hayes and Takemoto made no such allegations. Relators' allegations are simply not substantially the same as the publicly disclosed allegations.

Further, MSP WB is an original source. The District Court recognized that MSP WB had "'direct knowledge' of tens of thousands of instances wherein the [Defendants] failed to report their primary payer responsibility causing Government health programs to reimburse for the beneficiaries' accident-related medical expenses." [District Court Order, R. 102, Page ID # 2954]. However, the District Court ignored that the public disclosure bar was amended in 2010 and found that "the information derived from Relator MSP WB's 'own proprietary non-public data,' is information apparently belonging to MSP Recovery, LLC—a different entity than Relator MSP WB. Any information from MSP Recovery, then, is attributed to MSP Recovery—not MSP WB. (N. 16 The Relators did not dispute Defendants' assertion that the information comes from an affiliate company, MSP Recovery, LLC. . .)." [*Id*. at 2979].

The Court relied on two Tenth Circuit decisions in disqualifying MSP WB as an original source. Both were based on the prior version of the statute. *See U.S. ex rel. Fine v. Advanced Scis., Inc.*, 99 F.3d 1000, 1007 (10th Cir. 1996) and *U.S. ex rel. Precision Co. v. Koch Indus., Inc.,* 971 F.2d 548, 554 (10th Cir. 1992).

The public disclosure bar was amended in 2010, abrogating *Fine* and *Precision*, and the FCA no longer disqualifies a relator as an original source because its knowledge is derivative of its own affiliates' knowledge, so long as its knowledge is derived independent of the alleged public disclosure bars. The revised text "plainly

requires courts to compare the relator's knowledge with the information that was disclosed through the public disclosure sources enumerated in § 3730(e)(4)(A)." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 305 (3rd Cir. 2016).

Finally, the District Court erred in dismissing Count II with prejudice. Count II is not barred by any public disclosure. The Relators asserted a claim for conspiracy to defraud and the action should have proceeded. It is certainly not clear that the complaint could not be saved by amendment.

## VI.
## ARGUMENT

### POINT 1

**THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DISMISSING COUNT I WHERE NEITHER PUTATIVE PUBLIC DISCLOSURE IS SUBSTANTIALLY THE SAME AS THE REVERSE FALSE CLAIM ALLEGED BY RELATORS AND WHERE MSP WB IS AN ORIGINAL SOURCE THAT MATERIALLY ADDS TO ANY PRIOR PUBLIC DISCLOSURE**

This Court applies a three-part test to determine whether the public disclosure bar precludes an otherwise valid FCA claim. *Rahimi*, 3 F.4th at 823 (6th Cir. 2021). First, it asks whether, before the filing of the qui tam complaint, there had been any public disclosures from which fraud might be inferred. Second, it assesses how closely related the allegations in the complaint are to those in the public disclosures. Finally, it asks whether the *qui tam* plaintiff is nevertheless an original source of the information. *U.S. ex rel. Maur v. Hage-Korban,* 981 F.3d 516, 522 (6th Cir. 2020).

The District Court found that two prior actions publicly disclosed the fraud asserted in this action. They did not. Neither *Takemoto* nor *Hayes* alleged "a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements." Nor could they. These cases are not substantially the same as the false claims alleged here. Neither *Takemoto* nor *Hayes* passed 9(b) muster and neither is remotely the same as this action.

### i. The District Court Committed Harmful Reversible Error in Determining Allegations that Predate the Required Disclosures Relators Allege are FCA Violations Bars Relators' Claims

Neither *Hayes* nor *Takemoto* could have been public disclosures of the fraud alleged here. Both *Hayes* and *Takemoto* alleged violations of the MSPA that predated Section 111. Neither alleged that Allstate violated Section 111. This is necessarily true since both actions were brought in 2011, based on fraud committed in 2010 and before, and Section 111 was not yet implemented. Rather, implementation of Section 111 requirements on workers' compensation and no-fault claims began on January 1, 2011, while third party liability reporting was not required until January 1, 2012.[4] *See CMS, Revised Implementation Timeline* (Dec.

---

[4] *Takemoto* and *Hayes* were both unsealed in 2014 and the amended complaints were also underline filed in 2014. *Takemoto*, No. 1:11-cv-00613, ECF 22 (W.D.N.Y. Apr. 3, 2014)) (order unsealing case); *Hayes*, No. 1:12-cv-01015, ECF 16 (W.D.N.Y. Mar. 20, 2014) (order unsealing case); ECF 78-28, PgID 1479 (*Takemoto* amended complaint); ECF 78-29, PgID 1608 (*Hayes* amended complaint). Nevertheless, both only allege facts that occurred in 2010 and before, and the factual allegations of the initial complaints are unchanged in the amended complaints.

21, 2010), https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/Archive/Downloads/RevTimeline122110.pdf.

Accordingly, *Takemoto* references Section 111 requirements as future events ("the *looming* MMSEA Section 111 reporting requirements" and "the *impending* MMSEA 111 legislation"), and not as a basis for past unpaid MSP Act reimbursements claims. *Takemoto v. ACE Am. Ins. Co. et al*, No. 1:11-cv-00613, ECF 170 ¶ ¶58, 93, (W.D.N.Y. Oct. 31, 2014).

*Hayes* alleged that far from ignoring the new Section 111 requirements, Section 111 had already had a salutary effect and "raised the consciousness of liability insurers" even before implementation. *United States ex rel. Hayes v. Allstate Insurance Company et al*, No. 1:12CV01015, ECF 21 ¶ 377 (W.D.N.Y. April 22, 2014). *Hayes* alleges the *opposite* of these Relators.

As recognized by the District Court, the gravamen of Relators' action is "a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements". [District Court Order, R. 102, Page ID # 2954]. The District Court correctly acknowledged the fraud alleged by Relators when it determined that the Relators had standing: "Taken as true, the Relators established a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements." [*Id*.].

However, Allstate was required to begin complying with Section 111 reporting on January 1, 2011 for first party workers' compensation and no fault claims—*i.e.*, the date of implementation—while third party liability reporting was not a requirement until January 1, 2012. *Takemoto*'s claim was not and could never be that insurance companies were falsely claiming compliance with Section 111 for the plain and simple reason that *Takemoto* was filed in 2011 based on facts that occurred in 2010 and before.

All that *Takemoto* alleged regarding Section 111 was his solicitation as an outsource compliance officer <u>prior</u> to Section 111 implementation. [Takemoto Complaint, R. 78-28, Page ID #1417-18]. During this solicitation he discovered insurance companies were not complying with <u>existing</u>, pre-Section 111, requirements. [Id. at 1423]. In fact, the last time relator Takemoto spoke with Allstate was on September 27, 2010, several months before Section 111 was implemented. [Id. at 1428-43]. Thus, *Takemoto* alleged he "approached Allstate to pitch . . . reporting to Medicare as required by <u>the *impending* MMSEA 111 legislation</u>." [Id. at 1433]. [Emphasis is supplied.] When Takemoto met with Allstate on March 12, 2009 [Id.], and on July 22, 2009 [Id. at 1434], Section 111 had not been implemented and could not have been violated. In fact, *Takemoto* referred to Section 111 requirements as future events: "the *impending* MMSEA 111 legislation", *Takemoto* ECF 170 ¶ ¶58, 93. He never alleged or predicted whether or

not the insurance industry would comply with the Section 111 requirements once they were implemented.[5]

Similarly, *Hayes'* allegations are not a public disclosure of the claim here—Allstate's reverse false claim in submitting purposely deficient Section 111 reports and having ISO affix its imprimatur upon them. *Hayes'* complaint had nothing to do with false or deficient Section 111 reports. He said so himself: "379. The above cited section relative to 'report' is <u>entirely distinct</u> and <u>totally independent</u> of the MSP sections and responsibilities to reimburse and repay under which this suit is brought." *U.S. ex rel. Hayes v. Allstate,* No. 1:12CV01015, ECF 21 ¶ 379 (W.D.N.Y. April 22, 2014). [Emphasis added.]

Hayes alleged an altogether different "fraud" which did not pass Rule (b) muster and which resulted in the imposition of Rule 11 sanctions against him, namely that the insurance industry was sloughing off its MSP Act obligations unto plaintiffs and plaintiffs' lawyers through the use of creative releases. [Hayes Complaint, R. 78-29, Page ID #1593-4; 1597-1601]. The last release from Allstate

---

[5] While the *Takemoto* amended complaint did add factual allegations from 2011 as to several defendants, these additions merely allege, as with the other defendants, that Dr. Takemoto contacted those insurers to offer his services and that the insurers declined. There is no allegation that any insurer failed to properly report, nor could any such allegation have been made. Dr. Takemoto's services were <u>rejected</u> and he was never able to see what the insurers did after implementation of Section 111. [See Takemoto CM/ECF, Doc. 170 ¶¶ 112, 118, 158, 202, 219].

alleged in the *Hayes* complaint was for an accident that occurred in 2010,[6] well prior

to the implementation of any Section 111 reporting requirements.[7] And each general

release alleged in *Hayes* to be a cover-up arose from a third-party accident. Section

111 did not require insurers to submit reports regarding third party claims until

January 1, 2012. Mr. Hayes never even pretended to predict that the liability insurers

would shirk their responsibilities once the Section 111 reporting requirements were

implemented. In fact, he alleged the exact opposite, that the mere passage of the new

Section 111 requirements had already had a salutary effect even prior to

implementation:

> 377. This supplement to the SCHIP Act, though delayed in its enactment, has
> apparently raised the consciousness of liability insurers generally such that
> there appears to be more compliance with Medicare reimbursement then
> during the time periods cited herein when there was, essentially, complete
> avoidance.

[Id. at 1591].

As a result, the article describing *Hayes'* loss on appeal also fails as a public

disclosure bar. The article merely recites that Hayes was disciplined because he was

unable to support his allegations of a "nationwide scheme to withhold payments to

which Medicare was entitled under the [MSPA], in violation of the FCA." [Hayes

---

[6] The release appended by Hayes is unsigned and undated. *United States ex. rel. Hayes v. Allstate Insurance Co. et al.*, No. 1:12-cv-1015, ECF 21-30, Exhibit DD, (W.D.N.Y. October 23, 2012).
[7] *Id.*

Article, R. 78-10, Page ID #1334]. No description of any scheme is transcribed and, of course, no systematic failure to comply with Section 111 is mentioned. [Hayes Article, R. 78-10, Page ID #1334]

Relators have alleged an altogether different fraud than *Hayes* and *Takemoto*. Relators have set out a broad scheme to defraud the Government by intentional failure to comply with Section 111 and using the submission of fraudulent Section 111 reports.

When Allstate settles or accepts coverage under a no-fault policy, 42 U.S.C. § 1395y(b)(2)(B)(ii) requires Allstate to reimburse secondary payments on its own initiative, without notice, demand, or litigation. *Id*. ("a primary plan . . . shall reimburse the appropriate trust fund . . . if it is demonstrated that such primary plan has or had a responsibility to make payment . . ."). Putting the burden and duty on Allstate protects Medicare, who generally "pay[s] in the dark." *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 775 (11th Cir. 2020). Allstate's duty arises automatically and as a matter of law. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). Primary Payers contract and have direct access with beneficiaries, and the nature of the beneficiary's Medicare coverage (and prior Medicare payments) is a matter "of ascertainable fact," which means the following: Allstate has constructive knowledge of Medicare's prior payments. *Baxter*, 345 F.3d at 901; *see also Humana Med. Plan, Inc. v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1239 (11th Cir. 2016) (finding

liability insurer liable under the MSPA where insurer had knowledge of the health plans payments). That is to say, Allstate knows or should know when it is obligated to reimburse Medicare. However, Medicare is at a complete disadvantage. Medicare does not know about Allstate's primary payer liability unless Allstate discloses it through Section 111. *Kingsway Amigo*, 950 F.3d 764, 775. Here, Relators proffered actual proof that Allstate fails to obtain even social security numbers ("SSN"), which it needs to report, and Allstate failed to file <u>any</u> Section 111 Reports 72% of the time. [Operative Complaint, R. 41, Page ID #1068].

    ii.   *Defendants' Misreporting Incurred and Concealed a Distinct Payment Obligation*

There are two distinct obligations at play here, repayment and reporting. Relators allege that by failing to properly report, Allstate incurred and improperly avoided a $1,000 per claim, per day, penalty. 42 U.S.C. 1395y(b)(8)(E). This penalty constituted 'an obligation to pay or transmit money to the Government.' 31 U.S.C. 3729(a)(1)(G)." [ECF No. 86, PageID.2086-87]. This is not the same as an MSPA violation where the Government is entitled to reimbursement. No prior disclosure brought allegations related to this obligation.

Relators allege that "[e]very time [Allstate] violated their reporting obligations, they incurred a $1,000 per claim, per day obligation to the Government." [Relators' Response, R. 86, Page ID #2086-87]. This is a separate and distinct obligation from Allstate's MSPA responsibility to pay—or repay—underlying

medical claims and attaches regardless of Allstate's responsibility for the insurance claim itself. "Medical payments do not actually have to be paid for ORM reporting to be required. . . . "[i]nformation is to be reported . . . where . . . medicals are claimed." [*Id*. at 2097] (first ellipse added).

Therefore, by alleging that Allstate "incurred a $1,000 per claim, per day obligation to the Government" every time they failed to report a claim, Relators clearly raise a new false claim that cannot be barred. [*Id*. at 2104].

### iii.   *Courts Must Not Boost General Allegations to Wipe out Specific Allegations of Fraud*[8]

Relators allege the distinct schemes described above, and include deposition testimony, data analysis, and specific exemplars to support their allegations. At the "highest level of generality," each case involves insurers who fail to fulfill their MSPA obligations. As recognized by the District Court, the gravamen of the Relators' action is "a fraud injury on the United States due to Defendants' failure to satisfy Section 111's reporting requirements."

Considering only the allegation that "the Government was defrauded" because the insurers did not comply with the MSPA would end the inquiry. But this level of generality is improper. Every Circuit has found that "viewing FCA claims 'at the highest level of generality . . . is not sound.'" *Leveski*, 719 F.3d 818, 831 (7th Cir.

---

[8] Relators hereby incorporate their arguments in Section (i) above that the public disclosure bars are not "substantially the same" factually as Relators allegations.

2013) (quoting *U.S. ex rel. Goldberg v. Rush Univ. Med. Ctr.*, 680 F.3d 933, 936 (7th Cir. 2012)).

Just because a prior disclosure alleges a violation of the same statute does not preclude a later relator from alleging a distinct scheme or mechanism for committing fraud. *See Minn. Ass'n of Nurse Anesthetists v. Allina Health Sys. Corp.*, 276 F.3d 1032, 1044 (8th Cir. 2002) (holding that prior disclosure of defendant's improper billing practice did not bar allegations of defendant's scheme to falsely certify the necessity of that same billing practice). This case is analogous to *Goldberg*, and *Leveski*, because relators allege a "more sophisticated, second-generation method of violating the [law]" and this Court should follow those holdings to strike a balance in applying the public disclosure bar. *Leveski*, 719 F.3d at 832. Allowing a prior disclosure of "generalized fraud . . . to bar all FCA suits identifying specific instances of fraud . . . would deprive the Government. . . ." *U.S. ex rel. Mateski v. Raytheon Corp., 816 F.3d 565,*577 (9th Cir. 2016) (finding that the Seventh Circuit's approach in *Leveski* and *Goldberg* best "effectuates the purpose of the public disclosure bar by 'strik[ing] a balance between encouraging private persons to root out fraud and stifling parasitic lawsuits.'") (quoting *Schindler Elevator Corp. v. U.S. ex rel. Kirk*, 563 U.S. 401, 413 (2011)); *U.S. ex rel. Maxwell v. Kerr-McGee Oil & Gas Co.*, 540 F.3d 1180, 1187 (10th Cir. 2008) (prior lawsuit was not substantially similar despite

both complaints alleging defendant fraudulently underpaid oil royalty payments on federally leased lands because relator alleged "a distinct fraudulent scheme").[9]

As explained by the court in *Goldberg*, 680 F.3d at 935, allowing a very high level of generality to act as a public disclosure bar is inappropriate, "boosting the level of generality in order to wipe out *qui tam* suits that rest on genuinely new and material information is not sound." The disclosure of a single fraud could end up blocking private challenges to many different kinds of fraud. This creates de facto immunity for bad actors to keep committing fraud. *Id*. In *Goldberg* the Seventh Circuit Court of Appeals held that prior public disclosures of a teaching hospital's improper billing of its residents' <u>unsupervised</u> time did not bar a new action alleging the same teaching hospital's improper billing of its residents' <u>inadequately supervised</u> time. 680 F.3d at 935-36.

*Leveski* held that, allegations from an earlier case "seem very similar to Leveski's allegations on first impression[,] first impressions can be deceiving." 719 F.3d at 829. The relators in both cases were former employees with the same job title and alleged defendant violated the same statute. *Id.* at 832. Both cases alleged that ITT "violated the HEA by compensating its admissions and recruitment representatives based directly on the number of their enrolled students." *Id.* at 827.

---

[9] S*ee also U.S. ex rel. Reed v. KeyPoint Gov't Sols.*, 923 F.3d 729, 748 n.12 (10th Cir. 2019) (following *Leveski* and *Mateski*).

However, "[t]he details of **how** [defendant] allegedly violated the [HEA]" were different in both cases. *Id.* at 832 (emphasis added). In the earlier case, defendant simply violated the law, but in the later case it affirmatively claimed to be complying while committing the same violations. *Id.* at 830, 832. Therefore, the public disclosure bar did not apply because the allegations "are only similar to the [prior] allegations when viewed at the highest level of generality." *Id.* at 831.

Likewise, the Eighth Circuit in *Minn. Ass'n of Nurse Anesthetists* distinguished a prior audit which revealed that defendants were improperly billing for both an anesthesiologist and an anesthetist performing a single case with relator's allegation that defendants were lying about the necessity of both practitioners in such situations. 276 F.3d at 1044. When defendants realized, because of the audit, that they could no longer fly under the radar when billing for both practitioners' services in routine one-on-one situations, they "began falsely certifying that such cases required the involvement of both an anesthesiologist and an anesthetist." *Id.* In other words, the prior disclosure involved the same defendants, filing the same false claims—*i.e.* bills for two practitioners where only one was needed and therefore reimbursable—yet it did not trigger the public disclosure bar because relator alleged that defendants were not simply submitting the claims, hoping to avoid detection, they were affirmatively certifying to the government that the overlapping services were necessary.

These cases highlight a much finer distinction than the material differences between this action and *Hayes* and *Takemoto*. The nature of the alleged schemes and the details of how these obligations were circumvented is distinct. *Hayes* merely alleged that defendants were sloughing off their primary plan obligations unto plaintiffs using creative settlement releases. [Hayes Complaint, R. 78-29, Page ID #1593-94; 1597-1601]. *Takemoto* alleged insurers selectively complied with the then-existing MSP Act rules "where they believe[d] they might be caught if they failed to make payment."

Here, Relators allege a distinct scheme from those alleged in prior cases. Both *Hayes* and *Takemoto* focus exclusively on insurers obligations to reimburse CMS for conditional payments. Neither alleges Allstate is required to and fails to report all claims, regardless of responsibility to pay underlying medical claims. Neither alleges Allstate filed incomplete Section 111 reports and falsely certified compliance with these requirements. Neither even alludes to <u>how</u> Allstate effected the scheme— by colluding with ISO to create and maintain a system that consistently underreports claims.

Relators allege an altogether different fraud than *Hayes* and *Takemoto*. Relators here are the only relators to come forth post-Section 111 implementation with allegations or evidence of actual non-compliance with Section 111, a separate and distinct obligation than those alleged by *Hayes* and *Takemoto*. Allowing prior

complaints that are, at best, only similar to this case if viewed at the highest level of generality is unsound and should be rejected. This case involves both distinct payment obligations and a never-before disclosed mechanism for defrauding Medicare. Therefore, this Court should reverse the District Court's holding that Relators are barred by prior disclosures.

### The District Court Committed Harmful Reversible Error in Determining Deficiently Pled Prior Actions Can be Public Disclosures of Relators' FCA Allegations

*Hayes* and *Takemoto* are not public disclosures because they fail to provide notice of fraud. Neither passed 9(b) muster. Hayes' wild-eyed theory that the insurance industry defrauded the Government using releases in private accident cases resulted in Rule 11 sanctions.

Takemoto brought even less to the table:

> Takemoto can only speculate [that defendants had] reimbursement obligations . . . based on the facts that approximately 17% of the population are Medicare beneficiaries and that defendants issue settlements . . . for tens of thousands of claims involving Medicare beneficiaries' each year. . . . These facts are insufficient to give rise to a plausible inference obligation on the part of any defendant.

*U.S. ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 95 (2d Cir. 2017). All Takemoto brought forward was defendants' refusal to hire him as a compliance officer and lack of a robust compliance program:

> Takemoto seeks to avoid this conclusion by arguing that defendants' obligation was to adopt adequate MSPA compliance procedures, he points to

no authority supporting such an obligation, much less the proposition that such a claim is actionable under the FCA.

*Id*. That was Takemoto's claim. That is not this claim.

The dearth of any factual support in *Hayes* and *Takemoto* disqualify them as public disclosures. Such vacuous disclosures amount to nothing at all.

The District Court forwent the application of this Court's reasoning regarding the first-to-file bar from *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005). In *Walburn*, this Court held that a prior relator's failure to meet the requirements of Rule 9(b) means that the Government has not, as a matter of law, been alerted to fraud:

> In comparing the two complaints, the district court concluded that the broad fraudulent scheme alleged in the *Brooks* complaint "encompassed" the specific subset of fraud regarding the falsification of radiation dosage readings alleged by Walburn. The district court's conclusion, although undoubtedly correct, is ultimately unremarkable, as the same could be said for any *qui tam* action alleging fraud in connection with any aspect of Lockheed's operation of the Portsmouth Plant to have the misfortune of following behind the vague and broad-ranging allegations of fraud contained in the *Brooks* complaint. However, the recognition that the haystack of fraud set forth in *Brooks'* complaint, may, as a literal matter, be said to "encompass" the needle of the specific fraud Walburn seeks to bring to the Government's attention, does not answer the question before us: whether such a vague and broadly-worded complaint should be given preemptive effect under § 3730(b)(5).
>
> *   *   *
>
> However, we fail to see how according preemptive effect to a fatally-broad complaint furthers the policy of encouraging whistleblowers to notify the Government of potential frauds. A complaint that is

insufficient under Rule 9(b) is dismissed precisely because it fails to provide adequate notice to the defendant of the fraud it alleges. A complaint that fails to provide adequate notice to a defendant can hardly be said to have given the Government notice of the essential facts of a fraudulent scheme, and therefore would not enable the Government to uncover related frauds.

\* \* \*

Walburn's action cannot be "based on the facts underlying" the *Brooks* action when the facts necessary to put the Government on notice of the fraud alleged are conspicuously absent from the *Brooks* complaint.

*Id.* at 972-73.

Of course, it is noted that the bar addressed in *Walburn* was the FCA's first-to-file bar and not the public disclosure bar. But the reasoning certainly applies. "The 2010 amendments to the public-disclosure bar replaced 'based upon' with 'substantially the same.'" *U.S. ex rel Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 849 (6th Cir. 2020). The prior version applied the same "based upon" language in the first-to-file bar and addressed in *Walburn*: "No court shall have jurisdiction over an action under this section based upon the public disclosure." This Court held that the revision reduced the scope of the Public Disclosure Bar: "From a textual standpoint, 'substantially the same' facially demands a greater degree of similarity between the *qui tam* complaint and the prior disclosures than 'based upon' does. And 'substantially the same' undoubtedly is more rigorous than 'even partly based upon,' as we interpreted 'based upon' to mean." *Holloway*, 960 F.3d at 851. If a prior *qui tam* action does not pass 9(b) muster, a subsequent action cannot be "based on" it as

a matter of law. And if the subsequent action cannot be based upon the prior action as a matter of law, it certainly is not "substantially the same."

In rejecting to apply the *Walburn* reasoning, the District Court found that "[a]s a textual matter, the public disclosure bar's text fails to distinguish between meritorious and unmeritorious claims." However, the same is true of the first-to-file bar,[10] yet this Court applied sound logic and held that a "legally infirm" complaint does not bar subsequent relators because, in essence, a meritorious suit cannot be parasitic of, or "based on", an unmeritorious suit. *Walburn*, 431 F.3d at 973. "Indeed, we have previously recognized that it is precisely the heightened pleading requirement of Rule 9(b) that deters would-be relators from making "overly broad allegations" that fail to adequately alert the Government to possible fraud in an effort to preclude future relators from sharing in any bounty eventually recovered." *Id*.

Further, the allegations between Relators here and the prior disclosures significantly diverge and cannot be "substantially the same." *Takemoto* alleges that Allstate did not have a Section 111 vendor. Here, Relator's allege that Allstate did hire a vendor for the already implemented Section 111 Reports, Co-Defendant ISO. Disregarding the discrepancies in the allegations raised by Relators and those alleged

---

[10] *See* 31 U.S.C. § 3730(b)(5) ("[N]o person other than the Government may intervene or bring a related action based on the facts underlying the pending action.")

by *Hayes* and *Takemoto*, has the preclusive effect of boosting generality to wipe out the specificity. *See Goldberg,* 680 F.3d 933, 935 (7th Cir. 2012).

As a matter of law, Section 111 reporting has a specific purpose and meaning. It is a signal to Medicare that a primary payer has a responsibility to pay. That Allstate is ignoring that obligation with the aid of ISO, was never asserted in either *Takemoto* or *Hayes*. Allowing false, unmeritorious, and legally infirm prior disclosures to trigger the public disclosure bar contravanes the entire purpose of the bar and conflicts with binding precedent. The Court must ensure Acts of Congress are fulfilled and give deference to Congress' decision to legislate.

### Point 2

**THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DETERMINING RELATOR MSP WB IS NOT AN ORIGINAL SOURCE RELYING ON PRE-PPACA CASE LAW**

The Patient Protection and Affordable Care Act ("PPACA") became law on March 23, 2010. In addition to its better-known provisions, the PPACA amended the False Claims Act. *U.S. ex rel. Advocates for Basic Legal Equal., Inc. v. U.S. Bank, N.A.*, 816 F.3d 428, 430 (6th Cir. 2016). These changes "overhauled" and "radically changed" the FCA to "lower the bar for relators." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC,* 812 F.3d 294, 298-99 (3d Cir. 2016).

The District Court relied on Pre-PPACA law to disqualify Relator MSP WB as an original source. The prior version required the original source have "direct and

independent knowledge of the information on which the [qui tam complaint's] allegations are based." 31 U.S.C. § 3730(e)(4)(B) (2006). The FCA now defines an original source as an individual "who has knowledge that is *independent of and materially adds to the publicly disclosed allegations or transactions*. …" 31 U.S.C. § 3730(e)(4)(B) (emphasis added). The revision "expanded the definition of 'original source' by allowing a relator who 'materially adds' to the publicly disclosed information to qualify." *Majestic Blue Fisheries*, 812 F.3d at 297. The change is significant. It permits the original source to derive its knowledge from related parties so long as the knowledge is not derivative of prior public disclosures.

The District Court relied on the Tenth Circuit's opinions in *Fine,* 99 F.3d 1000 (10th Cir. 1996) and *Precision*, 971 F.2d 548 (10th Cir.1992) and held that MSP WB's knowledge must not be derivative of anyone's information—that its knowledge must be independent of *all* knowledge of the fraud, even that of its own affiliates and agents. This is no longer the law. This issue was addressed in *Majestic Blue Fisheries.*

The relator in *Majestic Blue Fisheries* was a law firm who obtained knowledge of fraud through discovery in civil litigation, like MSP WB. The Third Circuit Court of Appeals applied the new original source definition and asked whether the relator possessed knowledge that was independent *only* of the publicly disclosed allegations:

Congress expanded the definition of "original source" in § 3730(e)(4)(B). The salient question is no longer whether the relator has "direct and independent knowledge" of the information on which the allegations in the complaint are based. Rather, original source status now turns on whether the relator has "knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions." Significantly, a relator no longer must possess "direct … knowledge" of the fraud to qualify as an original source.

\* \* \*

An original source is now defined as one "who has knowledge that is independent of and materially adds to *the publicly disclosed allegations or transactions*." 31 U.S.C. § 3730(e)(4)(B) (2012). This definition therefore states that a relator's knowledge must be independent of, and materially add to, not all information readily available in the public domain, but, rather, only information revealed through a public disclosure source in § 3730(e)(4)(A).

Indeed, the text plainly requires courts to compare the relator's knowledge with the information that was disclosed through the public disclosure sources enumerated in § 3730(e)(4)(A). By using the definite article "the" before "publicly disclosed allegations or transactions" in § 3730(e)(4)(B), Congress has referred back to the public disclosures in § 3730(e)(4)(A).

*Majestic Blue Fisheries*, 812 F.3d at 305 (emphasis in original).

No one has suggested MSP WB derived its knowledge from *Hayes* or *Takemoto*. Applying the current definition of an original source to the information that MSP WB obtained from its affiliates and then voluntarily submitted to the Government leads ineluctably to the conclusion that MSP WB possesses knowledge that is "independent of . . . the publicly disclosed allegations or transactions [*i.e.*, the *Takemoto* and *Hayes* allegations]." 31 U.S.C. §3730(e)(4)(B) (2012). That MSP WB

obtained that knowledge from affiliates and is now the repository of that knowledge, is of no moment. The FCA no longer prohibits an original source's knowledge from being derivative, so long as the knowledge is not derived from specific publicly disclosed materials enumerated in § 3730(e)(4)(A). MSP WB's knowledge is independent of the *Takemoto* and *Hayes* complaints, the only public disclosure here. Relator's knowledge being derived from information gathered over years of litigation by affiliates makes no difference under the latest version of the FCA. Congress foreclosed any other interpretation.

The District Court dismissed Relators' claims based on a repealed statute and two cases decided decades before material changes to the statutes governing this litigation occurred. *See Fine*, 99 F.3d 1000, *Precision*, 971 F.2d 548.[11] [District Court Order, R. 102, Page ID # 2979]. This was error.

The *Precision* court held that "a qui tam plaintiff must have direct and independent knowledge of the information on which the allegations are based." 971 F.2d at 553. Accordingly, the court disqualified a corporation as an original source relator because its majority shareholder and president were the source of the knowledge prior to the formation of the corporate relator. *Id.* at 554. The District

---

[11] Both cases were decided when civil litigation was considered a public disclosure. PPACA changed these public disclosures so only civil litigation where the Government is a party is considered a public disclosure.

Court disqualified MSP WB on the same grounds, even though the statute *Precision* relied upon was repealed with a more lenient provision currently in place.

The *Fine* court conducted a similar analysis. 99 F.3d at 1004-1007. Not surprisingly, *Fine* applied the prior definition of an original source and held that the relator was not an original source because his discoveries were derived from audits conducted by the Government, his former employer. *Id*. at 1007.

As such, MSP WB is an original source because of its independent and material knowledge. The allegations in the SAC and the exhibits thereto make clear the essential elements of the fraud discovered and revealed to the Government by MSP WB are independent of any public disclosures.

Relators raise allegations of unmet obligations and schemes that neither *Hayes* nor *Takemoto* allude to: by failing to timely and accurately file Section 111 reports, Allstate incurred an obligation to pay civil penalties for non-compliance. [Operative Complaint Exhibit A, R. 41-1, Page ID # 1126-28]. Relators detail a unique mechanism for committing fraud.

Further, Relators add the "how" which is entirely missing from *Hayes* and *Takemoto*. Neither of these disclosures even mention ISO, let alone describe how primary plans use ISO as a clearinghouse allowing Allstate to share data about claims with other insurance companies without ever reporting those claims to CMS. As discussed below, Relators sufficiently allege that ISO was instrumental in

facilitating and concealing this scheme. [Operative Complaint, R. 41, Page ID #1019, 1032-33, 1046-48, 1063-65]. Relators proffered exemplars showing individual cases where Defendants failed to report. [*Id.* at 1068, 1091]. This is precisely "the something" Relators bring "to the table that would add value for the Government," which neither *Hayes* nor *Takemoto* could. *Maur,* 981 F.3d at 527 (6th Cir. 2020). The difference between a legally infirm pleading and allegations that detail particularized claims of fraud is inherently a material difference.

Applying the <u>current</u> definition of original source leads ineluctably to the conclusion that: (1) MSP WB possesses knowledge that is "independent of . . . the publicly disclosed allegations or transactions." 31 U.S.C. § 3730(e)(4)(B); and (2) MSP WB obtained that knowledge from its various affiliates and its agents and is now the repository of that knowledge. The FCA no longer prohibits an original source's knowledge from being derivative of an affiliate, so long as the knowledge is not derived from the specific publicly disclosed materials.

## POINT 3

**THE DISTRICT COURT COMMITTED HARMFUL REVERSIBLE ERROR IN DISMISSING COUNT II WITHOUT LEAVE TO AMEND AND WHERE AMENDMENT WOULD NOT BE FUTILE**

### A. Count II of the Second Amended Complaint States a Cause of Action for Conspiracy to Defraud

Count II is not barred by a prior public disclosure. The District Court nevertheless dismissed this Count for failure to state a cause of action. The District Court correctly determined that it should not, at this stage, dispute the truth of the Relators' allegations. Taken as true, Relators alleged sufficient plausible facts to assert that Allstate and ISO conspire to submit fraudulent Section 111 reports, and actively conceal Allstate's primary payer responsibilities, evidenced by, among other things, the termination of MSP's access to the ISO database. *See U.S. ex rel. Boothe v. Sun Healthcare Group, Inc.*, 496 F.3d 1169, 1176 (10th Cir. 2007) (stating that courts should make a determination "whether the public disclosure bar applies to each reasonably discrete claim of fraud"). Relators come forth with robust allegations of a newly discovered fraud. Relators buttressed these allegations with data and proof derived from their extensive civil litigation against these defendants. They deserve their day in court.

Under Rule 8(a), a plaintiff must provide sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *See Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 555–56, 570 (2007). A complaint is plausible "when the factual pleadings allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A relator can plead a "complex and far-reaching fraudulent scheme with particularity" by providing "examples of specific false claims" as "representative samples of the broader class of claims." *U.S. ex rel. Bledsoe v. Cmty. Health Sys., Inc*., 501 F.3d 493, 510 (6th Cir. 2007). A relator may also satisfy Rule 9(b) with "statistical evidence to strengthen the inference of fraud beyond possibility[.]" *U.S. ex rel. Ibanez v. Bristol-Myers Squibb Co*., 874 F.3d 905, 925 (6th Cir. 2017); *see also U.S. ex rel. Martin v. Life Care Centers of Am., Inc*., 114 F. Supp. 3d 549, 567 (E.D. Tenn. 2014) ("Statistical sampling has been used in litigation for decades, and … is not unique to this litigation.") Short of actually proving their case at this juncture, it is hard to see how Relators fell short.

Further, Relators filed a proposed TAC that certainly clears these hurdles. [Motion to Alter, R. 110, Page ID #3028]. The District Court found that the facts alleged in the SAC about the conduct attributed to ISO were conclusory and insufficient to raise a right to relief above the speculative level. [District Court Order, R. 106, Page ID #3011-16]. The Court also found that Relators' allegations were not pleaded with sufficient particularity. [*Id*. at 3016-17]. The proposed TAC sets forth a

short and plain statement of MSP's entitlement to relief against ISO. It alleges, among other things:

- facts about ISO's individual conduct, in addition to "background" facts pertaining to ISO's corporate dealings, such as ISO's possession of specific claims data in its database that should have been reported by Allstate under Section 111. [Proposed Third Amended Complaint, R. 110-1, Page ID #3070-71, 3103, 3115-16, 3117, 3121, 3124-25].

- that Relators possess records of particular claims in ISO's database that should have been reported. Relators' proposed exemplars and statistical evidence are demonstrable of such claims. [*Id*. at 3077, 3079, 3127-28, 3135, 3137].

- that ISO specifically trains and instructs Defendants to keep their data collection and reporting narrow and delay reporting until after Defendants have made or agreed to make a payment on a claim. [*Id.* at 3070-71, 3103, 3121]. These allegations lead to a reasonable inference that ISO "knowingly cause[d] to be made or used a false record or statement," namely the deficient Section 111 reports, which was "material to" the Primary Plans' "obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). These allegations lead to a reasonable inference that ISO "knowingly and improperly conceal[ed]"

Allstate's "obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G).

- that Allstate intentionally fails to collect SSNs and that both ISO and Allstate know that this is precisely the information that ISO would need to report under Section 111. These allegations lead to a reasonable inference that ISO "knowingly cause[d] to be made or used a false record or statement," namely the deficient Section 111- reports, which was "material to," Allstate's "obligation to pay or transmit money or property to the Government." 31 U.S.C. § 3729(a)(1)(G). These allegations lead to a reasonable inference that ISO "knowingly and improperly conceal[ed]," Allstate's "obligation to pay or transmit money or property to the Government" by failing to acquire information from Allstate and, affirmatively training and instructing Allstate (as well as others) to not acquire such information. 31 U.S.C. § 3729(a)(1)(G).

- that ISO cancelled MSP's contract and changed its terms of service to preclude entities, such as MSP, only after MSP identified instances of fraud, waste, and abuse using ISO's database. [Proposed Third Amended Complaint, R. 110-1, Page ID #3131-33]. These allegations lead to a reasonable inference that ISO "knowingly and improperly conceal[ed]" Allstate's "obligation to pay or transmit money or property to the

Government" by prohibiting MSP WB, from using ISO's database to uncover ISO's role in Allstate's fraudulent Section 111 Reporting. 31 U.S.C. § 3729(a)(1)(G). Moreover, these allegations lead to a reasonable inference that ISO attempted to thwart efforts to detect fraud, waste and abuse in the Medicare system. *See, e.g., U.S. ex rel. Spay v. CVS Caremark Corp.*, 913 F. Supp. 2d 125, 138 (E.D. Pa. 2012) (finding that defendants "intentionally and fraudulently thwarted" a Medicare fraud, waste, and abuse program to overcharge Medicare).

If accepted as true, these allegations state a claim that ISO is liable for alleged misconduct. *See Twombly*, 550 U.S. at 555–56, 570; *Iqbal*, 556 U.S at 678. This is true, even though Allstate delegated reporting responsibility to ISO but remained responsible for Section 111 reporting. Relators factually allege that ISO itself engaged in conduct that violates the FCA, namely knowingly causing to be made or using false records or statements material to, and knowingly and improperly concealing, Allstate's obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(G).

Count II properly asserts a conspiracy. The FCA prohibits conspiring "to commit a violation" of one or more of the FCA subsections. 31 U.S.C. § 3719(a)(1)(C). For an FCA conspiracy, all that must be alleged "is that there was a single plan, that the alleged co-conspirator shared in the general conspiratorial

objective, and that an overt act was committed.… The question of whether a person was a participant in a conspiracy is a question of fact." *United States v. Murphy,* 937 F.2d 1032, 1039 (6th Cir. 1991). "[A]greement to join the conspiracy need not be recorded or even express; it can be inferred from [defendant's] conduct." *United States v. Mosley*, 53 F.4th 947, 957 (6th Cir. 2022) (cleaned up).

Notably, federal courts have found FCA conspiracies even when co-defendants held a contractual relationship. *See, e.g., U.S. ex rel. Silingo v. WellPoint, Inc*., 904 F.3d 667, 678–79 (9th Cir. 2018) (holding defendant contracted, conspired, and operated the "hub" of the conspiracy, to submit false claims). Relators alleged, with particularity, there was a single plan between Allstate and ISO, who shared in the general conspiratorial objective of defrauding the Government using false statements in Primary Plans' Section 111 Reports. *See Murphy*, 937 F.2d at 1039.

Specifically, Relators alleged ISO knowingly houses data for thousands of claims received from Allstate that were not reported as required. [Proposed Third Amended Complaint, R. 110-1, Page ID #3070-71, 3103, 3115-3116, 3117, 3121, 3124-3125]. Relators' exemplars and statistical evidence demonstrate particular claims Allstate failed to properly report under Section 111. [*Id.* at 3077, 3079, 3127-28, 3135-36, 3137].

Relators also alleged Allstate delegates reporting functions to ISO, and ISO specifically trains and instructs Allstate to narrow its data collection and delay

reporting until Allstate has made or agreed to make a payment on a claim. [*Id.* at 3070-71, 3103, 3121]. Relators allege Allstate and ISO, operating as the conspiracy "hub", used ISO's services to facilitate the general conspiratorial objective of submitting false statements in Allstate's Section 111 reporting. [*Id.* at 3070-71, 3103, 3115-16, 3117, 3121, 3124-25]; *Silingo*, 904 F.3d at 678–79. These factual allegations regarding Allstate and ISO's conduct lead to the inference they are acting in furtherance of the general conspiratorial objective of defrauding the Government by submitting false Section 111 reporting. *See Mosley*, 53 F.4th at 957; *Murphy*, 937 F.2d at 1039.

Moreover, Relators alleged facts, construed in the light most favorable to Relators and accepted as true, that ISO cancelled MSP's contract and changed its user agreement in furtherance of, and to conceal, its conspiracy with Allstate. *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012); *Mosley*, 53 F.4th at 957. Accordingly, Relators alleged facts establishing Allstate and ISO conspired to commit reverse FCA violations.

**B. THE DISTRICT COURT COMMITTED HARMFUL, REVERSIBLE ERROR IN REFUSING TO GRANT LEAVE TO AMEND WHERE THE RELATORS' PLEADING HAD NOT BEEN PREVIOUSLY TESTED AND WHERE THE RELATORS PROFFERED A THIRD AMENDED COMPLAINT THAT STATES A VIABLE CAUSE OF ACTION**

The Order dismissing Count II with prejudice was the first time that the Defendants attacked the operative complaint and the first time that the District Court identified any purported deficiencies in the operative pleading. When Relators attempted to cure those purported deficiencies by filing a Rule 59(e) motion attaching a proposed Third Amended Complaint, the District Court rejected the request as futile. This is plainly an abuse of discretion. [District Court Order, R. 111, Page ID #3418].

Dismissal with prejudice and without leave to amend is not appropriate unless it is clear on *de novo* review that the complaint could not be saved by amendment. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015). Accordingly, courts in this Circuit have concluded that dismissal without prejudice with leave to amend was warranted, even where a *qui tam* complaint did not satisfy Rule 9(b). *See, e.g., U.S. ex rel. Griffith v. Conn,* 117 F. Supp. 3d 961, 988 (E.D. Ky. 2015) (dismissing without prejudice and granting leave to amend because the case "involves numerous complex issues and theories, and this opinion is the first time the Court has detailed the deficiencies in the relators' pleadings"); *U.S. ex rel. Dunn v. Procarent, Inc*., 2022 WL 2834685, at \*22 (W.D. Ky. July 20, 2022) (finding, despite complaint's

failure to satisfy Rule 9(b), "that there is a reasonable probability that the Relators' most recent complaint can be saved by amendment"). A district court should "freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). The Federal Rules reject approaching pleadings as a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle purpose of pleading is to facilitate a proper decision on the merits. *Foman v. Davis*, 371 U.S. 178, 181-82 (1962). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Id.*

The District Court found that "the Relators offered no authority to suggest that the Court must give the Relators an opportunity to amend the complaint before a dismissal without prejudice." [District Court Order, R. 111, Page ID #3419]. This is exactly this Court's holding in *Newberry v. Silverman*, 789 F.3d 636 (6th Cir. 2015) which was repeatedly cited by the Relators:

> An analysis of the merits of the fraud claim, however, would have revealed that the complaint failed to meet the pleading requirements of Rule 9(b). The district court should therefore have dismissed the claim, but without prejudice and with leave to amend, because "[d]ismissal with prejudice and without leave to amend is not appropriate unless it is clear on de novo review that the complaint could not be saved by amendment." In this case, there is a reasonable probability that the complaint could have been saved by an amendment. The district court therefore erred in not allowing Newberry the opportunity to request leave to amend after he received notice that his complaint was inadequately pled. …

The fraud claim is currently inadequately pled under Rule 9(b), but if those pleadings are sufficiently bolstered in an amended complaint, and if Newberry produces evidence to support his allegations in later phases of the litigation, then the claim might have merit. We therefore conclude that the district court erred in dismissing Newberry's fraud claim with prejudice, and we remand the case with instructions to allow Newberry an opportunity to file an amended complaint.

*Id.*, at 645-46.

Relators certainly believe that they have asserted a cause of action in Count II. Nevertheless, after the District Court ruled that Count II was deficient, the Relators proffered the TAC to sufficiently allege facts that, in addition to submitting and conspiring to commit reverse FCA violations, Allstate and ISO directly violated 31 U.S.C § 3729(a)(1)(A)–(B). This constitutes an additional count in the proposed TAC (Count III). As outlined in the proposed TAC, Relators can allege the following:

- Allstate and ISO knowingly (1) caused the submission of false claims for payment to the Government and (2) made, used, or caused to be made or used, false records and statements material to false or fraudulent claims to the Government. 31 U.S.C. § 3729(a)(1)(A), (B).

- Allstate and ISO did so by causing the submission of bills to the Government, directly or through Government contractors, by medical providers, beneficiaries, downstream entities, etc., for the payment of Government Healthcare Programs beneficiaries' medical services, which Government Healthcare Programs were not responsible for paying.

[Proposed Third Amended Complaint, R. 110-1, Page ID #3146-49].

- Allstate and ISO caused the submission of these false claims—as well as made, used, or caused to be made or used, false records and statements material to these false claims—by knowingly and improperly avoiding, concealing, and denying Allstate's primary payer status, in certifications to medical providers, beneficiaries and deficient Section 111 reporting. [*Id.*].

- Allstate and ISO jointly caused providers to submit improper claims to Medicare. Relators' proffered exemplars are instructive in this regard. As detailed in the proposed TAC, medical providers for each exemplar submitted bills to Government Healthcare Programs for payment of exemplar's medical services after Allstate denied payment, even though Allstate insured the exemplar. [*Id.* at 3127-28, 3137]. Thus, Allstate knowingly caused medical providers to unknowingly submit false claims to the Government.

- If Allstate denied primary payer responsibility, it made, used, or caused to be made or used by the medical provider, false records and statements material to the claim. Moreover, had Allstate and ISO properly reported Government Healthcare Program beneficiary status under Section 111, the Government would have been able to coordinate benefits. [*Id.* at 3116,

3121, 3147, 3150].

- Allstate and ISO knowingly caused Government contractors to submit false claims. [*Id.* at 3147, 3149-50]. This includes contract bidding, in which accident-related medical expenses the Government was not responsible for results in artificially inflated capitation payments paid from the Medicare Trust Fund. *Id. See* 42 C.F.R. § 422.254(b)(5). Accordingly, Relators allege facts that Allstate and ISO knowingly: (1) caused the submission of false claims for payment to the Government, directly or through Government contractors; and (2) made, used, or caused to be made or used, false records and statements material to false or fraudulent claims to the Government, directly or through Government contractors. 31 U.S.C. § 3729(a)(1)(A), (B).

The District Court found the allegations in the SAC concerning ISO were conclusory and insufficient to raise a right to relief above the speculative level. [District Court Order, R. 106, Page ID #3011-16]. The Court also found that Relators' allegations were not pleaded with sufficient particularity. [*Id*. at 3016-17]. This was the first pleading found to be deficient and can be easily fixed.

In response to the District Court's Order, Relators proffered factual allegations about ISO causing reverse FCA violations that satisfy Rules 8 and 9(b). The proposed TAC addressed the Court's concerns and alleged that Relators

representative samples are in ISO's database, but were not reported to CMS. [Proposed Third Amended Complaint, R. 110-1, Page ID #3077, 3079, 3127-28, 3137]. As shown, the TAC meets the pleading requirements for FCA claims and for conspiracy.

The District Court characterized Relators' motion as "a fourth chance to save their complaint through amendment". [District Court Order, R. 111, Page ID #3421]. However, the pleadings had never been tested *via* Motion to Dismiss. Relator Angelo first amended the complaint while the case remained under seal, before Defendants were served the summons and complaint. [Docket Entry, R. 3]. Relators then filed their Second Amended Complaint ("SAC") to include Relator MSP as a co-relator and to add related allegations based on Co-Relators original source information. [Docket Entries, R. 32,33, 41].

Relators filed their Rule 59(e) motion within 28 days of the District Court's dismissal order. *See* Fed. R. Civ. P. 59(e). Rule 15 exists precisely to permit a party to cure pleading deficiencies, especially when, as here, the pleading was the subject of a motion to dismiss for the first time. Notably, the seminal case of *Foman v. Davis*, 371 U.S. 178 (1962), speaks of "repeated failure to cure deficiencies" as grounds for denial under Rule 15. *Id*. at 182.

Thus, considering that amending the conspiracy claim against ISO and Allstate would not be futile, the District Court committed clear error of law by

dismissing Relators' claims with prejudice when the SAC could be amended to meet the District Court's requirements. It is not clear that the SAC could not be saved by amendment and the District Court's refusal to permit amendment is error.

**IX.**
**CONCLUSION AND RELIEF SOUGHT**

Appellants pray that this Court **reverse** the Order dismissing Count I on the basis of the Public Disclosure Bar, **reverse** the Order dismissing Count II without leave to amend, and **remand** with instructions to allow Relators leave to amend and to deem the proposed Third Amend Complaint as the operative complaint.

Dated: June 15, 2023                    Respectfully submitted,

                                        By:    /s/ Shereef H. Akeel
                                               Shereef H. Akeel
                                               Adam S. Akeel
                                               Samuel R. Simkins
                                               Akeel & Valentine, PLC
                                               888 West Big Beaver Road, Ste. 350
                                               Troy, Michigan 48084-4736
                                               (248) 269-9595
                                               Shereef@akeelvalentine.com
                                               Adam@akeelvalentine.com
                                               Sam@akeelvalentine.com


                                               John W. Cleary
                                               Ryan H. Susman,
                                               MSP RECOVERY LAW FIRM
                                               2701 S. Le Jeune Road, 10th Floor
                                               Coral Gables, Florida 33134
                                               Telephone: (305) 614-2222

jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

J. Alfredo Armas
Armas Bertran Zincone
2701 South LeJeune Road
Tenth Floor
Coral Gables, Florida 33134
Telephone: 305-461-5100
E-Mail: alfred@armaslaw.com

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA, et al.,**

**Qui Tam Relators-Appellants,**

**v.**

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.,**

**Defendants-Appellees**

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Relators certifies pursuant to Fed. R. App. P. 32(g)(1)(C) that the *Brief of Appellant* complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this Brief has been prepared in a proportionally spaced typeface using Microsoft Word, Times New Roman font in 14-point size, with footnotes in Times New Roman font, 14-point size.

This Brief contains 11,692 words including footnotes and excluding the parts of the Brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

/s/ Adam S. Akeel

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA, et al.,**

**Qui Tam Relators-Appellants,**

**v.**

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.,**

**Defendants-Appellees**

---

## ADDENDUM:

## DESIGNATION OF RELEVANT DISTRICT COURT DOCUMENTS

R: 3, First Amended Complaint

R: 32, Relators' Motion for Leave to File Second Amended Complaint, Page ID # 739-751

R: 33, Sealed Exhibit B to Relators' Motion for Leave to File Second Amended Complaint

R: 41, Second Amended Complaint, Page ID # 1015-1128R: 78-10, Hayes Article, Page ID # 1333-1335

R: 78-28, Takemoto Complaint, Page ID # 1405-1479

R: 78-29, Hayes Complaint, Page ID # 1480-1610

R: 85, Relators' Response to Defendants' Motion for Judicial Notice, Page ID # 1631-1868

R: 86, Relators' Response to Defendants' Motion to Dismiss, Page ID # 2052-2377

R: 93, Relators' Response to ISO's Motion to Dismiss, Page ID # 2715-2742

R: 99, Transcript of Motion to Dismiss Hearing, Page ID # 2890-2939

R: 102, District Court Order Granting Motion in Part, Page ID # 2947-2980

R: 103, Relators' Motion for Reconsideration, Page ID # 2981-2999

R: 104, District Court Order Denying Motion for Reconsideration, Page ID #3001-3005

R: 106, District Court Order Granting Motion to Dismiss, Page ID # 3007-3022

R: 110, Relators' Motion to Amend/Correct Judgment, Page ID # 3028-3062

R: 110-1, Proposed Third Amended Complaint, Page ID # 3064-3417

R: 111, District Court Order Denying Motion to Amend/Correct Judgment, Page ID # 3418-3423

R: 114, Notice of Appeal, Page ID # 3428-3430

No. 23-1196

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA, et al.,**

**Qui Tam Relators-Appellants,**

v.

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.,**

**Defendants-Appellees**

## ADDENDUM:
## DESIGNATION OF RELEVANT STATUTES

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Limited on Constitutional Grounds by  U.S. v. Hawley,  N.D.Iowa,  Aug. 01, 2011

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle III. Financial Management
      Chapter 37. Claims (Refs & Annos)
        Subchapter III. Claims Against the United States Government (Refs & Annos)

31 U.S.C.A. § 3729

§ 3729. False claims

Currentness

**(a) Liability for certain acts.--**

  **(1) In general.**--Subject to paragraph (2), any person who--

  **(A)** knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval;

  **(B)** knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim;

  **(C)** conspires to commit a violation of subparagraph (A), (B), (D), (E), (F), or (G);

  **(D)** has possession, custody, or control of property or money used, or to be used, by the Government and knowingly delivers, or causes to be delivered, less than all of that money or property;

  **(E)** is authorized to make or deliver a document certifying receipt of property used, or to be used, by the Government and, intending to defraud the Government, makes or delivers the receipt without completely knowing that the information on the receipt is true;

**(F)** knowingly buys, or receives as a pledge of an obligation or debt, public property from an officer or employee of the Government, or a member of the Armed Forces, who lawfully may not sell or pledge property; or

**(G)** knowingly makes, uses, or causes to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government, or knowingly conceals or knowingly and improperly avoids or decreases an obligation to pay or transmit money or property to the Government,

is liable to the United States Government for a civil penalty of not less than $5,000 and not more than $10,000, as adjusted by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. 2461 note; Public Law 104-410 [1]), plus 3 times the amount of damages which the Government sustains because of the act of that person.

**(2) Reduced damages.**--If the court finds that--

**(A)** the person committing the violation of this subsection furnished officials of the United States responsible for investigating false claims violations with all information known to such person about the violation within 30 days after the date on which the defendant first obtained the information;

**(B)** such person fully cooperated with any Government investigation of such violation; and

**(C)** at the time such person furnished the United States with the information about the violation, no criminal prosecution, civil action, or administrative action had commenced under this title with respect to such violation, and the person did not have actual knowledge of the existence of an investigation into such violation,

the court may assess not less than 2 times the amount of damages which the Government sustains because of the act of that person.

**(3) Costs of civil actions.**--A person violating this subsection shall also be liable to the United States Government for the costs of a civil action brought to recover any such penalty or damages.

**(b) Definitions.**--For purposes of this section--

  **(1)** the terms "knowing" and "knowingly" --

    **(A)** mean that a person, with respect to information--

      **(i)** has actual knowledge of the information;

      **(ii)** acts in deliberate ignorance of the truth or falsity of the information; or

      **(iii)** acts in reckless disregard of the truth or falsity of the information; and

    **(B)** require no proof of specific intent to defraud;

  **(2)** the term "claim"--

    **(A)** means any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property, that--

      **(i)** is presented to an officer, employee, or agent of the United States; or

      **(ii)** is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest, and if the United States Government--

        **(I)** provides or has provided any portion of the money or property requested or demanded; or

        **(II)** will reimburse such contractor, grantee, or other recipient for any portion of the money or property which is requested or demanded; and

**(B)** does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal employment or as an income subsidy with no restrictions on that individual's use of the money or property;

**(3)** the term "obligation" means an established duty, whether or not fixed, arising from an express or implied contractual, grantor-grantee, or licensor-licensee relationship, from a fee-based or similar relationship, from statute or regulation, or from the retention of any overpayment; and

**(4)** the term "material" means having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property.

**(c) Exemption from disclosure.**--Any information furnished pursuant to subsection (a)(2) shall be exempt from disclosure under section 552 of title 5.

**(d) Exclusion.**--This section does not apply to claims, records, or statements made under the Internal Revenue Code of 1986.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 978; Pub.L. 99-562, § 2, Oct. 27, 1986, 100 Stat. 3153; Pub.L. 103-272, § 4(f)(1)(O), July 5, 1994, 108 Stat. 1362; Pub.L. 111-21, § 4(a), May 20, 2009, 123 Stat. 1621.)

Notes of Decisions (2090)

## Footnotes

1    So in original. Probably should read "Public Law 101-410".

31 U.S.C.A. § 3729, 31 USCA § 3729

Current through P.L.118-5. Some statute sections may be more current, see credits for details.

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Unconstitutional or Preempted  Prior Version's Validity Called into Doubt by   U.S. ex rel. Schweizer v. Oce, N.V.,   D.D.C.,   Feb. 02, 2010

United States Code Annotated
  Title 31. Money and Finance (Refs & Annos)
    Subtitle III. Financial Management
      Chapter 37. Claims (Refs & Annos)
        Subchapter III. Claims Against the United States Government (Refs & Annos)

31 U.S.C.A. § 3730

§ 3730. Civil actions for false claims

Effective: December 27, 2022

Currentness

**(a) Responsibilities of the Attorney General.**--The Attorney General diligently shall investigate a violation under section 3729. If the Attorney General finds that a person has violated or is violating section 3729, the Attorney General may bring a civil action under this section against the person.

**(b) Actions by private persons.--(1)** A person may bring a civil action for a violation of section 3729 for the person and for the United States Government. The action shall be brought in the name of the Government. The action may be dismissed only if the court and the Attorney General give written consent to the dismissal and their reasons for consenting.

**(2)** A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4(d)(4) of the Federal Rules of Civil Procedure.[1] The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders. The Government may elect to intervene and proceed with the action within 60 days after it receives both the complaint and the material evidence and information.

**(3)** The Government may, for good cause shown, move the court for extensions of the time during which the complaint remains under seal under paragraph (2). Any such motions may be supported by affidavits or other submissions in camera. The defendant shall not be required to respond to any

complaint filed under this section until 20 days after the complaint is unsealed and served upon the defendant pursuant to Rule 4 of the Federal Rules of Civil Procedure.

**(4)** Before the expiration of the 60-day period or any extensions obtained under paragraph (3), the Government shall--

**(A)** proceed with the action, in which case the action shall be conducted by the Government; or

**(B)** notify the court that it declines to take over the action, in which case the person bringing the action shall have the right to conduct the action.

**(5)** When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action.

**(c) Rights of the parties to qui tam actions.--(1)** If the Government proceeds with the action, it shall have the primary responsibility for prosecuting the action, and shall not be bound by an act of the person bringing the action. Such person shall have the right to continue as a party to the action, subject to the limitations set forth in paragraph (2).

**(2)(A)** The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

**(B)** The Government may settle the action with the defendant notwithstanding the objections of the person initiating the action if the court determines, after a hearing, that the proposed settlement is fair, adequate, and reasonable under all the circumstances. Upon a showing of good cause, such hearing may be held in camera.

**(C)** Upon a showing by the Government that unrestricted participation during the course of the litigation by the person initiating the action would interfere with or unduly delay the Government's prosecution of the case, or would be repetitious, irrelevant, or for purposes of harassment, the court may, in its discretion, impose limitations on the person's participation, such as--

**(i)** limiting the number of witnesses the person may call;

**(ii)** limiting the length of the testimony of such witnesses;

**(iii)** limiting the person's cross-examination of witnesses; or

**(iv)** otherwise limiting the participation by the person in the litigation.

**(D)** Upon a showing by the defendant that unrestricted participation during the course of the litigation by the person initiating the action would be for purposes of harassment or would cause the defendant undue burden or unnecessary expense, the court may limit the participation by the person in the litigation.

**(3)** If the Government elects not to proceed with the action, the person who initiated the action shall have the right to conduct the action. If the Government so requests, it shall be served with copies of all pleadings filed in the action and shall be supplied with copies of all deposition transcripts (at the Government's expense). When a person proceeds with the action, the court, without limiting the status and rights of the person initiating the action, may nevertheless permit the Government to intervene at a later date upon a showing of good cause.

**(4)** Whether or not the Government proceeds with the action, upon a showing by the Government that certain actions of discovery by the person initiating the action would interfere with the Government's investigation or prosecution of a criminal or civil matter arising out of the same facts, the court may stay such discovery for a period of not more than 60 days. Such a showing shall be conducted in camera. The court may extend the 60-day period upon a further showing in camera that the Government has pursued the criminal or civil investigation or proceedings with reasonable diligence and any proposed discovery in the civil action will interfere with the ongoing criminal or civil investigation or proceedings.

**(5)** Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section. Any finding of fact or conclusion of law

made in such other proceeding that has become final shall be conclusive on all parties to an action under this section. For purposes of the preceding sentence, a finding or conclusion is final if it has been finally determined on appeal to the appropriate court of the United States, if all time for filing such an appeal with respect to the finding or conclusion has expired, or if the finding or conclusion is not subject to judicial review.

**(d) Award to qui tam plaintiff.--(1)** If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action. Where the action is one which the court finds to be based primarily on disclosures of specific information (other than information provided by the person bringing the action) relating to allegations or transactions in a criminal, civil, or administrative hearing, in a congressional, administrative, or Government Accounting [2] Office report, hearing, audit, or investigation, or from the news media, the court may award such sums as it considers appropriate, but in no case more than 10 percent of the proceeds, taking into account the significance of the information and the role of the person bringing the action in advancing the case to litigation. Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

**(2)** If the Government does not proceed with an action under this section, the person bringing the action or settling the claim shall receive an amount which the court decides is reasonable for collecting the civil penalty and damages. The amount shall be not less than 25 percent and not more than 30 percent of the proceeds of the action or settlement and shall be paid out of such proceeds. Such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

**(3)** Whether or not the Government proceeds with the action, if the court finds that the action was brought by a person who planned and initiated the violation of section 3729 upon which the action was brought, then the court may, to the extent the court considers appropriate, reduce the share of the proceeds of the action which the person would otherwise receive under paragraph (1) or (2) of this subsection, taking into account the role of that person in advancing the case to litigation and any relevant circumstances pertaining to the violation. If the person bringing the action is convicted of criminal conduct arising from his or her role in the violation of section 3729, that person shall be dismissed from the civil action and shall not receive any share of the proceeds of

the action. Such dismissal shall not prejudice the right of the United States to continue the action, represented by the Department of Justice.

**(4)** If the Government does not proceed with the action and the person bringing the action conducts the action, the court may award to the defendant its reasonable attorneys' fees and expenses if the defendant prevails in the action and the court finds that the claim of the person bringing the action was clearly frivolous, clearly vexatious, or brought primarily for purposes of harassment.

**(e) Certain Actions Barred.--(1)** No court shall have jurisdiction over an action brought by a former or present member of the armed forces under subsection (b) of this section against a member of the armed forces arising out of such person's service in the armed forces.

**(2)(A)** No court shall have jurisdiction over an action brought under subsection (b) against a Member of Congress, a member of the judiciary, or a senior executive branch official if the action is based on evidence or information known to the Government when the action was brought.

**(B)** For purposes of this paragraph, "senior executive branch official" means any officer or employee listed in paragraphs (1) through (8) of section 13103(f) of title 5.

**(3)** In no event may a person bring an action under subsection (b) which is based upon allegations or transactions which are the subject of a civil suit or an administrative civil money penalty proceeding in which the Government is already a party.

**(4)(A)** The court shall dismiss an action or claim under this section, unless opposed by the Government, if substantially the same allegations or transactions as alleged in the action or claim were publicly disclosed--

   **(i)** in a Federal criminal, civil, or administrative hearing in which the Government or its agent is a party;

   **(ii)** in a congressional, Government Accountability Office, or other Federal report, hearing, audit, or investigation; or

**(iii)** from the news media,

unless the action is brought by the Attorney General or the person bringing the action is an original source of the information.

**(B)** For purposes of this paragraph, "original source" means an individual who either (i) prior to a public disclosure under subsection (e)(4)(a), has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) [3] who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section.

**(f) Government not liable for certain expenses.**--The Government is not liable for expenses which a person incurs in bringing an action under this section.

**(g) Fees and expenses to prevailing defendant.**--In civil actions brought under this section by the United States, the provisions of section 2412(d) of title 28 shall apply.

**(h) Relief from retaliatory actions.--**

**(1) In general.**--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

**(2) Relief.**--Relief under paragraph (1) shall include reinstatement with the same seniority status that employee, contractor, or agent would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An action under this subsection may be brought in the appropriate district court of the United States for the relief provided in this subsection.

**(3) Limitation on bringing civil action.**--A civil action under this subsection may not be brought more than 3 years after the date when the retaliation occurred.

## CREDIT(S)

(Pub.L. 97-258, Sept. 13, 1982, 96 Stat. 978; Pub.L. 99-562, §§ 3, 4, Oct. 27, 1986, 100 Stat. 3154, 3157; Pub.L. 100-700, § 9, Nov. 19, 1988, 102 Stat. 4638; Pub.L. 101-280, § 10(a), May 4, 1990, 104 Stat. 162; Pub.L. 103-272, § 4(f)(1)(P), July 5, 1994, 108 Stat. 1362; Pub.L. 111-21, § 4(d), May 20, 2009, 123 Stat. 1624; Pub.L. 111-148, Title X, § 10104(j)(2), Mar. 23, 2010, 124 Stat. 901; Pub.L. 111-203, Title X, § 1079A(c), July 21, 2010, 124 Stat. 2079; Pub.L. 117-286, § 4(c)(36), Dec. 27, 2022, 136 Stat. 4358.)

Notes of Decisions (2638)

## Footnotes

1        See, now, Rule 4(i) of the Federal Rules of Civil Procedure.

2        So in original. Probably should be "Accountability".

3        So in original. Probably should be "or (ii) has".

31 U.S.C.A. § 3730, 31 USCA § 3730
Current through P.L.118-5. Some statute sections may be more current, see credits for details.

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA, et al.,**

**Qui Tam Relators-Appellants,**

**v.**

**ALLSTATE COUNTY MUTUAL INSURANCE COMPANY, et al.,**

**Defendants-Appellees**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 15th day of June, 2023, a copy of the foregoing document was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all counsel of record indicated on the electronic filing receipt. Parties may access this filing through the Court's electronic filing system.

*/s/ Adam S. Akeel*