No. 23-1196

# In the United States Court of Appeals for the Sixth Circuit

———————

UNITED STATES OF AMERICA, EX REL. MSP WB, LLC & MICHAEL ANGELO,
PLAINTIFFS-APPELLANTS,

*v.*

ALLSTATE INSURANCE COMPANY, ET AL.,
DEFENDANTS-APPELLEES

———————

*APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION,
NO. 2:19-CV-11615, HON. STEPHEN J. MURPHY, PRESIDING*

———————

**RESPONSE BRIEF OF INSURER DEFENDANTS**

———————

STEVEN M. LEVY
Dentons US LLP
233 S. Wacker Drive, Suite 5900
Chicago, IL 60606
(312) 876-8000
steven.levy@dentons.com

FRED K. HERRMANN (P78874)
Kerr, Russell and Weber, PLC
500 Woodward Avenue, Suite 2500
Detroit, MI 48226
(313) 961-0200
fherrmann@kerr-russell.com

LINDA T. COBERLY
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5700
lcoberly@winston.com

*Counsel for Insurer Defendants*

# CORPORATE DISCLOSURE STATEMENT

1.     Defendant-Appellees Allstate County Mutual Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate Indemnity Company, Allstate Insurance Company, Allstate New Jersey Insurance Company, Allstate New Jersey Property & Casualty Insurance Company, Allstate Northbrook Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Texas Lloyds, Allstate Vehicle & Property Insurance Company, Castle Key Indemnity Company, Castle Key Insurance Company, Encompass Home & Auto Insurance Company, Encompass Indemnity, Encompass Independent Insurance Company, Encompass Insurance Company, Encompass Insurance Company of America, Encompass Insurance Company of Massachusetts, Encompass Insurance Company of New Jersey, Encompass Property & Casualty Company, Encompass Property & Casualty Insurance Company of New Jersey, Esurance Insurance Company, Esurance Insurance Company of New Jersey, Esurance Property & Casualty Insurance Company, First Colonial Insurance Company, North Light Specialty Insurance Company, Encompass Floridian Indemnity Company, and Encompass Floridian Insurance Company (collectively, "Insurer Defendants") are all indirect subsidiaries of The Allstate Corporation, which is a Delaware corporation. The stock of The Allstate Corporation is publicly traded.

2.     No publicly held entity owns 10% or more of the stock of The Allstate Corporation.

3.     Beyond the information provided above, there is no publicly traded corporation that has a financial interest in the outcome.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT............................................ii

TABLE OF CONTENTS ........................................................ iii

STATEMENT REGARDING ORAL ARGUMENT ................................. 1

INTRODUCTION ........................................................................ 2

STATEMENT OF THE ISSUES.................................................. 8

STATEMENT OF THE CASE .................................................... 9

    I.    The first three complaints and related motions ................... 10

    II.    The district court's rulings ................................................... 16

        A.    *Dismissal of Count I.*. .................................................. 16

        B.    *Denial of Reconsideration* ............................................. 18

        C.    *Dismissal of Count II* .................................................... 21

        D.    *Denial of Motion to Alter or Amend* ............................. 22

STANDARD OF REVIEW.......................................................... 23

SUMMARY OF THE ARGUMENT ........................................... 25

ARGUMENT ............................................................................... 29

    I.    This Court should affirm the dismissal of Count I.............. 29

        A.    The district court was right to apply the public disclosure bar to Relators' recycled allegations of reverse false claims.................................................... 29

            1.    Relators' allegations are "substantially the same" as the allegations in prior lawsuits. ........ 30

            2.    Relators are not "original sources." .................... 40

        B.    This Court may also affirm the dismissal of Count I on the ground that the allegations are insufficient to state a claim. ........................................ 44

1. Relators cannot rely on "group pleading" to avoid making specific allegations against each Insurer Defendant. ...................................... 45

2. Relators do not plead any "obligation" owed by an Insurer Defendant "to the government." ....................................... 48

3. Relators do not identify any specific instance of a false statement or material omission made with scienter. .............................. 54

II. This Court should affirm the dismissal of Count II. ............ 57

A. The district court correctly concluded that Relators failed to plead an unlawful agreement or plan between ISO and any Insurer Defendant. .......... 57

B. This Court may also affirm the dismissal of Count II on the ground that it is precluded by the public disclosure bar. .................................... 62

III. The district court did not abuse its discretion in dismissing Relators' claims with prejudice and refusing their post-judgment attempt to replead. ............................... 65

CONCLUSION ......................................................... 70

CERTIFICATE OF COMPLIANCE ....................................... 72

CERTIFICATE OF SERVICE ............................................. 73

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*United States ex rel. Adams v. Aurora Loan Servs., Inc.*,
813 F.3d 1259 (9th Cir. 2016)...............................................51

*Alexander v. Eagle Mfg. Co.*,
714 F. App'x 504 (6th Cir. 2017) .........................................66

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................56

*Atlas Techs., LLC. v. Levine*,
268 F. Supp. 3d 950 (E.D. Mich. 2017) ...............................47

*United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC*,
878 F.3d 1224 (10th Cir. 2017)............................................46

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
342 F.3d 634 (6th Cir. 2003)...............................................44

*United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*,
501 F.3d 493 (6th Cir. 2007)...............................................45

*Burr v. Grand Trunk W. R.R. Co.*,
2022 WL 4951231 (6th Cir. 2022) .......................................23

*United States ex rel. Crockett v. Complete Fitness Rehab.*,
*Inc.*, 721 F. App'x 451 (6th Cir. 2018) ................................61

*United States ex rel. Dennis v. Health Mgmt. Assocs.*,
2013 WL 146048 (M.D. Tenn. 2013) ...........................57, 58

*Dykes v. Finco*,
2021 U.S. App. LEXIS 11792 (6th Cir. 2021) .....................66

*United States ex rel. Gear v. Emergency Med. Assocs. of Ill.*,
436 F.3d 726 (7th Cir. 2006) ................................................. 64

*United States ex rel. Harper v. Muskingum Watershed Conserv. Dist.*, 842 F.3d 430 (6th Cir. 2016) ................................. 23, 55

*United States ex rel. Harper v. Muskingum Watershed Conservancy Dist.*, 739 F. App'x 330 (6th Cir. 2018) .......................... 67

*United States ex rel. Hayes v. Allstate Ins. Co.*,
686 F. App'x 23 (2d Cir. 2017) ............................................... 47

*United States ex rel. Hendrickson v. Bank of Am., N.A.*,
343 F. Supp. 3d 610 (N.D. Tex. 2018), *aff'd*, 779 F. App'x
250 (5th Cir. 2019) ............................................................... 54

*United States ex rel. Holbrook v. Brink's Co.*,
336 F. Supp. 3d 860 (S.D. Ohio 2018) ................................... 62

*United States ex rel. Holloway v. Heartland Hospice, Inc.*,
960 F.3d 836 (6th Cir. 2020) ..................................... 29, 30, 39

*United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*,
874 F.3d 905 (6th Cir. 2017) ........................................ *passim*

*United States ex rel. Jamison v. McKesson Corp.*,
649 F.3d 322 (5th Cir. 2011) ..................................... 39, 40, 65

*Justice v. Peterson*,
2022 WL 2188451 (6th Cir. 2022) ................................... 24, 66

*Kienzle v. Gen. Motors, LLC*,
2013 WL 511397 (E.D. Mich. 2013) ...................................... 68

*United States ex rel. Kolchinsky v. Moody's Corp.*,
162 F. Supp. 3d 186 (S.D.N.Y. 2016) .................................... 51

*United States ex rel. Lada v. Exelis, Inc.*,
824 F.3d 16 (2d Cir. 2016) .................................................... 60

vi

*MAO-MSO Recovery II, LLC v. Mercury Gen.*,
2021 WL 3615905 (C.D. Cal. 2021) ...................................... 5

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins.
Co.*, 994 F.3d 869 (7th Cir. 2021) ....................................... 5

*United States ex rel. Mason v. State Farm Mut. Auto. Ins.
Co.*, 2008 WL 2857372 (D. Idaho 2008) .............................. 54

*United States ex rel. Mason v. State Farm Mut. Auto. Ins.
Co.*, 2009 WL 2486339 (D. Idaho 2009) .............................. 56

*Maur v. Hage-Korban*,
981 F.3d 516 (6th Cir. 2020) ...................................... *passim*

*McNulty v. Arctic Glacier, Inc.*,
2016 WL 465490 (E.D. Mich. 2016) ................................... 68

*Morse v. McWhorter*,
290 F.3d 795 (6th Cir. 2022) ............................................. 24

*MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*,
2021 WL 1164091 (S.D.N.Y. 2021) ................................. 5, 50

*MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*,
66 F.4th 77 (2d Cir. 2023) ................................................. 50

*In re Natural Gas Royalties Qui Tam Litig.*,
562 F.3d 1032 (10th Cir. 2009) .................................. *passim*

*Newberry v. Silverman*,
789 F.3d 636 (6th Cir. 2015) ....................................... 69, 70

*Ohio Police & Fire Pension Fund v. Standard & Poor's Fin.
Serv. LLC*, 700 F.3d 829 (6th Cir. 2012) ........................... 67

*United States ex rel. Osheroff v. HealthSpring, Inc.*,
938 F. Supp. 2d 724 (M.D. Tenn. 2013) ............................. 31

vii

*United States ex rel. Owsley v. Fazzi Assocs.*,
  16 F.4th 192 (6th Cir. 2021) ............................................................. 45

*United States ex rel. Petras v. Simparel, Inc.*,
  857 F.3d 497 (3d Cir. 2017) ........................................................ 51, 52

*United States ex rel. Rahimi v. Rite Aid Corp.*,
  2019 WL 10374285 (E.D. Mich. 2019) .......................................... 43

*United States ex rel. Rahimi v. Rite Aid Corp.*,
  3 F.4th 813 (6th Cir. 2021) ............................................................. 23

*Sanderson v. HCA-The Healthcare Co.*,
  447 F.3d 873 (6th Cir. 2006) ........................................................... 55

*Scottsdale Ins. Co. v. Flowers*,
  513 F.3d 546 (6th Cir. 2008) ........................................................... 34

*United States ex rel. Simoneaux v. E.I. DuPont de Nemours
  & Co.*, 843 F.3d 1033 (5th Cir. 2016) ............................................ 53

*United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*,
  674 F. App'x 92 (2d Cir. 2017) ........................................................ 47

*U.S. v. Murphy*,
  937 F.2d 1032 (6th Cir. 1991) ......................................................... 58

*United States v. Alcan Elec. & Eng'g, Inc.*,
  197 F.3d 1014 (9th Cir. 1999) .................................................... 38, 63

*United States v. Caremark, Inc.*,
  634 F.3d 808 (5th Cir. 2011) ........................................................... 52

*United States v. Wal-Mart Stores E., LP*,
  858 F. App'x 876 (6th Cir. 2021) .................................................... 61

*Walburn v. Lockheed Martin Corp.*,
  431 F.3d 966 (6th Cir. 2005) ........................................................... 39

*United States ex rel. Winkler v. BAE Sys., Inc.*,
957 F. Supp. 2d 856 (E.D. Mich. 2013) ........................................ 45, 60

## Statutes

31 U.S.C. § 3729(a)(1)(C) ................................................................ 14, 58

31 U.S.C. § 3729(a)(1)(G) ...................................................... *passim*

31 U.S.C. § 3729(b)(1)(A) ....................................................................... 55

31 U.S.C. § 3729(b)(3) ............................................................................ 48

31 U.S.C. § 3730(e)(4)(A) ................................................................ 29, 30

31 U.S.C. § 3730(e)(4)(B) ...................................................................... 41

31 U.S.C. § 3730(e)(4)(B), A ................................................................. 41

42 U.S.C. § 1395w-23(a)(1)(B) ............................................................ 52

Medicare Secondary Payer Act, 42 U.S.C. § 1395y(b) ................... *passim*

Section 111 of the Medicare, Medicaid, and SCHIP
Extension Act of 2007, 42 U.S.C. § 1395y(b)(8) ......................... *passim*

## Other Authorities

85 Fed. Reg. 8793, 8796 (Feb. 18, 2020) ................................................ 53

Fed. R. App. P. 28(a)(6) .......................................................................... 10

Fed. R. Civ. P. 8 ..................................................................... 2, 8, 45, 56

Fed. R. Civ. P. 9(b) ................................................................ *passim*

Fed. R. Civ. P. 12 .................................................................................... 23

Fed. R. Civ. P. 15 .................................................................................... 66

Fed. R. Civ. P. 15(a) ............................................................................... 65

Fed. R. Civ. P. 59(e)..................................................................23

Fed. R. Civ. P. 60(b)................................................................23

## STATEMENT REGARDING ORAL ARGUMENT

Insurer Defendants respectfully submit that oral argument is unnecessary. The decision on review is well reasoned and involves a straightforward application of the public disclosure bar, and Relators also plainly failed to plead specific and particularized facts sufficient to state a violation of the False Claims Act. The court dismissed this case based on the pleadings and on a handful of public disclosures suitable for judicial notice, so the record is neither extensive nor complex. The judgment can and should be affirmed without argument.

## INTRODUCTION

This False Claims Act lawsuit presents nothing new—and certainly nothing fraudulent—and the district court properly dismissed it with prejudice. The suit is part of a longstanding campaign by Relators and their counsel to capitalize on a well-known regulatory and reporting issue relating to Medicare reimbursements. Like others before them, they assert that private insurers are deliberately refusing to provide required reimbursement payments for treatment conditionally paid for under Medicare.

Despite multiple attempts, though, Relators have never been able to muster the factual allegations needed to state a claim for fraud. While the complaint is lengthy, most of it is conclusory. The facts it alleges are found only in a couple of pages and neither add materially to what others have alleged before nor come close to stating a claim for fraud or conspiracy. As a result, the district court properly dismissed the Second Amended Complaint with prejudice, citing the False Claims Act's "public disclosure bar" and the pleading requirements of Rules 8 and 9(b). While the court focused on the public disclosure bar for Count

I (reverse false claim) and the pleading failure for Count II (conspiracy), both grounds apply to both claims, and the dismissal can and should be affirmed on either basis.

What underlies this case is a well-known regulatory issue, not a fraud. The medical expenses of Medicare beneficiaries are often paid in the first instance by Medicare or a non-governmental Medicare Advantage Organization ("MAO"). Sometimes, a Medicare beneficiary is also entitled to coverage under private insurance—for example, when claims are assigned to a private insurer under a state no-fault statute. In those situations, the insurer may have a duty to reimburse. Most of these situations are easy to identify, and when the policyholder tenders the claim, the insurer routinely pays. On occasion, however, there may be a delay in connecting the claim to the relevant private insurer, so a Medicare program may pay the expense conditionally and recover later once the relevant insurer is identified.

To make it easier to connect conditional payments to private insurers, Congress enacted reporting requirements in Section 111 of the Medicare, Medicaid, and SCHIP Extension Act of 2007. These

requirements went into effect in 2011, though they were widely publicized for years before that. Under Section 111, insurers must file quarterly reports with the federal Centers for Medicare & Medicaid Services ("CMS") that include the identity of any claimants who are seeking coverage for medical expenses and who the insurer has determined may also be covered under Medicare. 42 U.S.C. § 1395y(b)(8). In a small percentage of these cases—where it turns out a conditional Medicare payment has already been made—the reporting helps CMS connect the dots.

Because Section 111 reporting is very complex, some private companies—like defendant Insurance Services Office, Inc. ("ISO")—have developed data-management capabilities and contract with insurers to assist in complying with the reporting requirements.

Unfortunately, parasitic litigation funders—like the financier behind relator MSP WB, LLC and its counsel, MSP Recovery Law Firm—are exploring ways to profit from this scheme. They have adopted a business model that involves mining data (including from publicly available reports, *see* Opening Br. 18), buying potential

reimbursement claims that MAOs may have against insurers, and attempting to pursue those claims in bulk through serial litigation under the Medicare Secondary Payer Act ("MSP Act"). The Seventh Circuit has recognized that these lawsuits "have all the earmarks of abusive litigation."[1] Federal district courts around the country have criticized these suits as long on invective and short on facts, and so far, the strategy has universally failed.[2]

This case represents the latest effort by the MSP Recovery Law Firm to repackage the same strategy under a different federal statute—the False Claims Act—in pursuit of treble damages. Relators contend that the Insurer Defendants are defrauding the government and have conspired with ISO to do so, including through intentionally incomplete or false reporting under Section 111. Yet Relators have not identified a

---

[1] *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 871 (7th Cir. 2021).

[2] *See, e.g.*, *MAO-MSO Recovery II, LLC v. Mercury Gen.*, 2021 WL 3615905, *6 (C.D. Cal. 2021) (citing *MSP Recovery Claims, Series LLC v. USAA Gen. Indem. Co.*, 208 WL 5112998, *13 (S.D. Fla. 2018)); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, *1 (S.D.N.Y. 2021).

single example of a knowing omission or knowingly false statement in any Section 111 report. Nor do they identify any instance where an insurer intentionally deprived the government of any required payment. At most, Relators say they have collected data suggesting that some claims do not find their way into a Section 111 report and some reimbursement payments are not ultimately made.

This is nothing new. The district court carefully analyzed the allegations in this case and found them substantially similar to allegations that have been asserted in court and reported in the media over many years. For example, two previous relators—Michael Hayes and Kent Takemoto—alleged years ago that defendant Allstate Insurance Company and others "knowingly avoided and concealed their statutory obligations under the Medicare Secondary Payer Act . . . to fully reimburse Medicare for the payments that the Medicare program had already made for the[] beneficiar[y's] health care" (R.78-29, PageID.1487 (*Hayes* amended complaint)), and failed to "repay [Medicare] for past conditional payments" (R.78-28, PageID.1424 (*Takemoto* amended complaint)). Based on these and other prior

disclosures, the district court correctly held that Relators' "reverse false claim" count was precluded under the False Claims Act's "public disclosure bar."  R.102, PageID.2947–80.

On appeal, Relators rely principally on an argument they did not make until after they lost the motion to dismiss: they argue that the *Hayes* and *Takemoto* lawsuits are different because they related to conduct that took place before the Section 111 reporting requirements formally went into effect.  Opening Br. 26–39, 42–43.  But when Relators raised this argument below in a motion for reconsideration, the district court properly rejected it for both procedural and substantive reasons.  R.104, PageID.3001–05.  Relators' brief does not show that this denial of reconsideration was error—much less an abuse of discretion, as required to set the ruling aside.

Further, the district court also did not err in dismissing the conspiracy count for failure to state a claim—or in entering its dismissal with prejudice and then, after the judgment, denying Relators' after-the-fact motion for leave to replead.  As the court explained, Relators had already been given multiple chances to replead.  Indeed, they filed

7

their Second Amended Complaint after the Insurer Defendants had already filed a motion to dismiss raising the same issues that later proved fatal—the public disclosure bar based on *Hayes* and *Takemoto*, and the failure to comply with the pleading standards of Rules 8 and 9(b). Relators were thus fully aware of the deficiencies in their pleading and had every opportunity to cure them. And Relators did not make even a bare request to file a further amended complaint until after the adverse judgment was entered. The court found this strategy to be dilatory and in bad faith. In this respect too, Relators have not demonstrated any abuse of discretion—nor have they provided any other basis to set the judgment aside.

## STATEMENT OF THE ISSUES

I.      Whether the district court correctly dismissed Count I ("reverse false claim") by applying the False Claims Act's "public disclosure bar," when a variety of public sources disclosed the allegations underlying the complaint with the same level of detail, and when Relators did not materially add to those facts in any way that qualifies them as an "original source."

II.     Whether the dismissal of Count I may also be affirmed on the alternative ground that Relators did not provide sufficient factual allegations to plead a false statement or omission made with scienter.

III.     Whether the district court correctly dismissed Count II (conspiracy) when Relators did not plead sufficient facts alleging an agreement between any Insurer Defendant and ISO to violate the False Claims Act.

IV.     Whether the dismissal of Count II may also be affirmed on the alternative ground that the claim of an underlying primary violation of the False Claims Act was precluded by the public disclosure bar and the allegations of ISO's involvement did not materially add to what had already been publicly disclosed.

V.     Whether the district court acted within its discretion in dismissing Relators' Second Amended Complaint with prejudice and denying their post-judgment request to replead.

## STATEMENT OF THE CASE

Insurer Defendants offer the statement below to comply with the Federal Rules of Appellate Procedure, which require "a concise

statement of the case . . . describing the relevant procedural history, and identifying the rulings presented for review, with appropriate references to the record." Fed. R. App. P. 28(a)(6). Relators' Statement of the Case does not describe the relevant procedural history—including their prior opportunities to replead—nor does it identify all the relevant rulings. *See* Opening Br. 14 (stating only that "[t]his case was disposed of on a motion to dismiss," without citation to the record). As discussed below, Relators' arguments on appeal would actually require setting aside four distinct orders by the district court. These include an order denying a motion for reconsideration (R.104, PageID.3001–05) and an order denying a motion to alter or amend the judgment to permit a new, post-judgment request for repleading (R.111, PageID.3418–23)—both of which are subject to review only for an abuse of discretion.

## I.    The first three complaints and related motions

The original relator here, Michael Angelo, filed his initial complaint asserting claims under the False Claims Act against three insurers—Allstate Insurance Company, Esurance Insurance Company, and Encompass Insurance Company—on behalf of the United States

and Michigan.  A few months later, Angelo filed an amended complaint against the same insurers.  R.1, PageID.1–66.  After that complaint was unsealed, the initial Insurer Defendants filed a motion to dismiss, arguing that the complaint was precluded by the public disclosure bar— including, specifically, because of the disclosures in the complaints in *Hayes* and *Takemoto*.  R.28, PageID.709–17 & n.5.  The motion also argued at length that the complaint failed to plead facts sufficient to state a claim under Rule 9(b).  *Id.*, PageID.718–29.

Rather than responding to that motion, Angelo sought and received leave to file a Second Amended Complaint.  Order, R.35, PageID.870–71.  His new pleading purported to add new defendants: a host of additional Insurer Defendants (all separate subsidiaries of The Allstate Corporation) and an insurance service provider called ISO.  Second Am. Compl. ("SAC") ¶¶27–58, R.41, PageID.1026–33.  The new pleading also added an additional co-relator, MSP WB, LLC.  *Id.* ¶¶19–23, PageID.1024–25.  Most of the Second Amended Complaint consists of a discussion of the applicable law, regulations, regulatory guidance,

and typical industry practice—all of which are public knowledge. *Id.* ¶¶65–167, 176–97, PageID.1034–57, 1060–65.

As in the prior pleadings, the basic theory in the Second Amended Complaint is that the Insurer Defendants failed to reimburse conditional payments made by Medicare and by private medical providers and other entities categorized as MAOs. *Id.* ¶¶15–16, PageID.1022–23. In the most general and conclusory terms—and without any allegations specific to any Insurer Defendant—Relators assert that the Insurer Defendants in general "fail[] to comply with the obligations imposed on them by the MSP Law and federal regulations" (*id.* ¶168, PageID.1057–58) and "routinely and intentionally submit incomplete or inaccurate reports" under Section 111 "for the purpose of decreasing or avoiding obligations to pay the government" (*id.* ¶¶184, 169, PageID.1063, 1058). Relator Angelo professes personal knowledge of unspecified "instances of fraud" (*id.* ¶225, PageID.1070), and relator MSP WB professes knowledge of "tens of thousands of instances" through an affiliate (*id.* ¶210, PageID.1068). On appeal, MSP WB explains that its affiliate obtains this knowledge by analyzing

unspecified "official reports," presumably from the government itself. Opening Br. 18.

The only specifics in the Second Amended Complaint are two brief "exemplars." *See* R.41 ¶¶227–35 & app. B, PageID.1071–72, 1089–90. In the first, Relators allege that "E.A." was a pedestrian in an automobile accident and was assigned through Michigan's no-fault law to "the Allstate Insurance Group." *Id*. ¶¶227–30, PageID.1071. Relators allege that E.A. received prescriptions from different pharmacies and that while he was a Medicare beneficiary, "Allstate Insurance Group never reported E.A.'s identity and claims to CMS as required by Section 111 and failed to make primary payments relating to E.A.'s accident-related care." *Id*. ¶233, PageID.1071. This exemplar does not identify any false statement or incomplete report submitted to the government, nor does it say who submitted that report or what basis Relators have to assert that it was knowingly false. Further, the exemplar does not specify the insurance company involved, referring only to the "Allstate Insurance Group" (*id*.), which is neither a real legal entity nor a named defendant in this case.

13

For the other exemplar, Relators allege that a person identified as "K.S." received care following an automobile accident, paid for by a private company called the Health Insurance Plan of Greater New York. *Id*. app. B., PageID.1089–90. According to Relators, K.S. was also entitled to coverage under a no-fault policy issued by defendant Allstate Insurance Company. *Id*. Relators allege that Allstate Insurance Company *did* report this claim to ISO but "failed to reimburse" the private health plan. *Id*. No other detail is provided.

Count I asserts that the Insurer Defendants as a group violated Section 3729(a)(1)(G) by "caus[ing] to be submitted false records or statements to the Government by way of incomplete and inaccurate Section 111 reporting." *Id*. ¶244, PageID.1073. The balance of Count I consists of generalized statements and conclusions; it does not identify any records or statements, nor does it provide any other detail.

Count II asserts a conspiracy under 31 U.S.C. § 3729(a)(1)(C), contending that the Insurer Defendants conspired with ISO to commit the same underlying violation. *Id*. ¶¶255–62, PageID.1075–77. In support of this claim, Relators state only that the Insurer Defendants

had contractual relationships with ISO relating to Section 111 reporting.  *Id.* ¶¶190–91, PageID.1064.[3]

Tellingly, Relators also include an allegation that reveals their true dispute with ISO.  They allege that an affiliate of MSP WB had a subscription to access ISO's database and used it to mine data and assemble allegations for litigation across the country.  Upon discovering this, however—and allegedly "[t]o protect its status as an industry leader and the interests of its [insurer] clients"—ISO allegedly "cancelled MSP's subscription and changed the terms of its subscription contracts to specifically preclude" private companies like MSP WB's affiliate "from using [ISO's] data to pursue recovery or subrogation services."  *Id.* ¶195, PageID.1064.  The complaint alleges no facts connecting this allegation with any Insurer Defendant or with any instance of false or incomplete Section 111 reporting.

The Insurer Defendants again moved to dismiss, making the same arguments they had briefed before.  They argued that (1) the public

---

[3] Count III relies on the same facts to assert claims under the laws of ten states and Puerto Rico.  R.41, ¶¶263–307, PageID.1077–86.

disclosure bar precluded all claims asserted by Relators, who were not

original sources of the information; (2) the complaint failed to state a

claim under the heightened pleading standard of Rule 9(b); (3) the first-

to-file bar required dismissal as to the new relator MSP WB; and (4) the

complaint failed as to certain defendants based on lack of standing.

R.77, PageID.1181–1238.  In addition, Insurer Defendants filed a

Request for Judicial Notice of materials supporting their arguments

under the public disclosure bar.  R.78, PageID.1243–58.  Defendant ISO

filed a separate motion to dismiss.  R.89, PageID.2677–700.

## II.    The district court's rulings

The district court addressed the parties' arguments in a series of

separate orders.

### A.    *Dismissal of Count I.*  In its first order, the district

court began by ruling in Relators' favor on both the standing issue and

the first-to-file bar.  R.102, PageID.2953–59.  Then, the court granted

the Insurer Defendants' request for judicial notice in part and held that

Count I failed as a matter of law under the public disclosure bar.  *Id.*,

PageID.2947–80.  The court focused its attention on the amended

complaints in *Hayes* and *Takemoto* (R.78-28 and 78-29) and a 2017

news article (R.78-10), of which it took judicial notice.

Walking carefully through each of Relators' allegations, the court

observed that "[i]t is hard to imagine facts that more closely align with

the Relators' first allegation than what *Takemoto* detailed."  R.102,

PageID.2970.  The court explained:

> Relators claimed that no public source previously "identified
> any instance where Defendants ignored actual notice of
> underreporting and of reimbursement failures and refused to
> rectify them."  But the *Takemoto* relator alleged that he met
> with Allstate and other insurer companies to advise them of
> their Section 111 reporting requirements.  Despite the
> notice, "none of the defendants [took] meaningful steps . . . to
> remedy their noncompliance with their [Medicare Secondary
> Payer] obligations."

R.102, PageID.2970 (citations omitted).  The court continued: "Consider

too that *Hayes* alleged primary payers had 'knowingly avoided and

concealed their statutory obligations under the Medicare Secondary

Payer Act . . . to fully reimburse Medicare for the payments that the

Medicare program had already made for these beneficiaries[] for health

care.' . . . Simply put, the Relators' exemplars describe 'the same

scheme' (fraudulent failure to report and reimburse) by 'the same

corporate actor' (Allstate and similar insurance companies) as the publicly disclosed fraud." *Id.*, PageID.2972.  A 2017 news article about the *Hayes* litigation repeated the same allegations—specifically noting allegations against Allstate Insurance Company.  *Id.*, PageID.2974.

The court also held that Relators could not qualify as an "original source."  Among other things, the court reasoned that the "information presented in the present complaint does not materially add to the public disclosures."  *Id.*, PageID.2978.  The court concluded that "Relators' cursory argument that their allegations are 'based on information uniquely available to [them]' . . . is unpersuasive given that the relators in *Takemoto* and *Hayes* identified a substantially similar fraudulent scheme as the one alleged here."  *Id.* (citation omitted).

**B.    *Denial of Reconsideration.***  Relators moved to reconsider, arguing, among other things, that *Hayes* and *Takemoto* did not qualify as public disclosures because they concerned conduct that took place before the Section 111 reporting requirements formally went into effect.  R.103, PageID.2981–3000.  The district court denied that motion for two reasons.  Reconsideration Order, R.104, PageID.3001–05.

First, the court found that "Relators never offered the argument in their extensive briefing that responded to the motion to dismiss." *Id.*, PageID.3002–03. Because "the argument 'could, and should, have been made earlier,'" it was inappropriate for a motion to reconsider. *Id.* (citation omitted).

Second, the court rejected Relators' argument on its merits. The court explained that its prior ruling had "relied on the *amended* complaints from *Takemoto* and *Hayes*, which were both filed in 2014— not 2011" (*id.*), which was three years **after** the Section 111 requirements had gone into effect. The *Takemoto* amended complaint had "expressly claimed that insurer defendants—including Allstate— never took 'meaningful steps . . . to remedy their noncompliance with [its Medicare Secondary Payer] obligations' even after being told about Section 111's effect on reporting requirements and the potential [False Claims Act] liability." *Id.* (citations omitted). As the court observed, Relators "barely elaborated on the *Takemoto* allegation of noncompliance and claimed only that insurer Defendants are allegedly still out of compliance." *Id.* (citations omitted). On this basis, the court

reaffirmed that "*Takemoto*, together with *Hayes*, had put the Government on notice about the alleged fraud" and thus precluded Relators' complaint under the public disclosure bar.  *Id.*

The court also rejected Relators' argument that MSP WB had independent knowledge that materially adds to the publicly disclosed information in *Hayes* and *Takemoto*.  According to the court, this sort of claimed "additional knowledge" is not enough to satisfy the original source test.  *Id.*, PageID.3004.  Even if MSP WB had adequately pleaded that it had some additional knowledge, the court reasoned, that knowledge did not "materially add" to the publicly disclosed allegations, as it would not have "'offer[ed] information of such a nature that knowledge of it would affect the Government's decision-making.'" *Id.* (citing, *inter alia*, *Maur v. Hage-Korban*, 981 F.3d 516, 528 (6th Cir. 2020)).  Although Relators' motion for reconsideration took issue with the court's prior analysis of whether MSP WB's information was "independent," it did not challenge the court's analysis on the "materially adds" element, which alone was a sufficient basis for finding that MSP WB is not an original source.  *Id.* (citations omitted).

**C.    *Dismissal of Count II.*** Separately, the court entered an order granting Defendant ISO's motion to dismiss and the remainder of the Insurer Defendants' motion to dismiss.  R.106, PageID.3007–22.

Among other things, the court dismissed Relators' conspiracy claim because it consisted of bare-bones allegations without any facts identifying an agreement or plan between any of the Insurer Defendants and ISO to conspire against the government.  *Id.,* PageID.3018–19.  The court explained: "A mere contractual relationship that centers on Section 111 reporting does not lead to the conclusion that Defendant ISO took part in 'a single plan' or tried to achieve a 'general conspiratorial objective' with Insurer Defendants."  *Id.*, PageID.3019 (citations omitted).

Having dismissed the conspiracy count against ISO, the court also necessarily dismissed that count as to Insurer Defendants.  *Id.,* PageID.3020–21.  And having dismissed the federal claims against all defendants, the court declined to exercise supplemental jurisdiction over the state law claims.  *Id.,* PageID.3021–22.  The same day, the court also entered a separate judgment.  R.107, PageID.3023.

***D.      Denill of Motion to Alter or Amend.***  After the entry of judgment—and over a year after Defendants filed their motions to dismiss—Relators filed a Motion to Amend or Correct, asking the court to amend its judgment to allow them to file another amended complaint—the fourth complaint in this action.  R.110, PageID.3028–62; R.110-1, PageID.3063–3417 (proposed Third Amended Complaint).

The court promptly entered an order denying this motion.  R.111, PageID.3418–23.  The court noted that Relators had not formally sought leave to amend (with a proposed amended pleading attached) before entry of judgment.  *Id*.  The court also relied on the fact that Relators had already had multiple opportunities to amend, observing that "Relators' request for leave to file a fourth complaint after years of litigation and the final dismissal of its claims is evidence of 'undue delay, bad faith[,] or dilatory motive on the part of the movant.'" *Id*., PageID.3421–22 (citation omitted).  Indeed, quoting other district courts, the court characterized Relators' strategy as "strikingly reminiscent of the notorious litigation strategy" employed by affiliates of Relator MSP WB and repeatedly criticized by other courts:

> Under that strategy, the entity "throw[s] their allegations into as many federal courts as possible and see[s] what sticks." [T]he Court agrees that "enough is enough[;] . . . [f]ederal court is not a sounding board for litigants to test various theories until they find one allowing the litigation to continue."

*Id.,* PageID.3422 (footnote and citations omitted). The court concluded that "[t]here is simply no reason, under either Rule 59(e) or Rule 60(b), to justify affording the Relators '[y]et another opportunity to cure deficiencies in [their] allegations.'" *Id.* (citation omitted).

## STANDARD OF REVIEW

This Court conducts "*de novo*" review of an order dismissing a complaint under Rule 12 by way of the public disclosure bar. *United States ex rel. Rahimi v. Rite Aid Corp.*, 3 F.4th 813, 823 (6th Cir. 2021) (citing *United States ex rel. Harper v. Muskingum Watershed Conserv. Dist.*, 842 F.3d 430, 435 (6th Cir. 2016) (*"Harper I"*)).

A district court's denial of a motion for reconsideration is reviewed for an abuse of discretion. *Burr v. Grand Trunk W. R.R. Co.*, 2022 WL 4951231, *1 (6th Cir. 2022) (citing *In re Greektown Holdings, LLC*, 728 F.3d 567, 573 (6th Cir. 2013)).

This Court also conducts abuse-of-discretion review with respect to a district court's denial of a motion to alter or amend a judgment, as well as a district court's denial of leave to amend. *Morse v. McWhorter*, 290 F.3d 795, 799–800 (6th Cir. 2022). Relators incorrectly argue that *de novo* review is appropriate in all cases granting dismissal with prejudice. Opening Br. 21. But that is true only when the "district court base[d] its decision on the legal conclusion that an amended complaint could not withstand a motion to dismiss." 290 F.3d at 799–800. The court's ruling here does not rest on any such legal conclusion. It rests instead on the court's determination that Relators had already had several chances to cure the defects in their pleading, had not properly raised their request to amend before judgment, and had exhibited conduct demonstrating "'undue delay, bad faith[,] or dilatory motive.'" Order, R.111, PageID.3420–3422 (quoting *Morse*, 290 F.3d at 800). This Court reviews such a decision for abuse of discretion. *Morse*, 290 F.3d at 799–800; *see, e.g., Justice v. Peterson*, 2022 WL 2188451, *4 (6th Cir. 2022) (order granting dismissal with prejudice was not an

abuse of discretion when plaintiff did not timely seek leave to amend or file a proposed amendment).

## SUMMARY OF THE ARGUMENT

The district court correctly concluded that Relators' "reverse false claim" theory (Count I) is precluded by the public disclosure bar. Relators' allegations are substantially the same as those made in a variety of prior suits and news reports—including in prior False Claims Act suits brought by relators Takemoto and Hayes. Relators' Second Amended Complaint merely adds an additional legal gloss on the issue—mostly relating to Section 111—and provides two new "exemplars." The conduct underlying these exemplars is not materially different from the conduct alleged by others long before.

On appeal, Relators rely principally on an argument that they did not make in their opposition to the motion to dismiss—that the *Takemoto* and *Hayes* complaints could not stand as public disclosures because they related to conduct that took place before Section 111's reporting requirements became mandatory. Given that this argument could have been raised earlier, the district court did not abuse its

discretion in rejecting the argument when Relators raised it for the first time in a motion for reconsideration.  Moreover, the court correctly rejected this argument on its merits as well, recognizing that the 2014 amended complaint in *Takemoto* ***did*** address the requirements of Section 111, and the Second Amended Complaint did not add meaningfully to what the *Takemoto* complaint had said on this subject.

Relators cannot escape the public disclosure bar by claiming they were original sources, as they did not "materially add" to the disclosures made in *Takemoto* and *Hayes*.  The additional information Relators have proffered—the inclusion of ISO as a defendant and alleged co-conspirator, and the addition of an alleged $1,000 per-claim, per-day penalty for failing to comply with Section 111—do not materially add to what was previously disclosed about the Insurer Defendants' alleged failure to report their primary payer status and repay conditional payments, which remains the gist of the claim.

This Court may also affirm the dismissal of Count I on the alternative ground that Relators failed to plead sufficient facts to state a reverse false claim under 31 U.S.C. § 3729(a)(1)(G).  The complaint

contains only one exemplar that alleges conduct by an actual legal entity and a named defendant, Allstate Insurance Company—and that exemplar involves an alleged failure to make a reimbursement payment to a private health insurer, not the government. *See* SAC app. B, R.41, PageID.1089. As for the rest of the defendants, Relators provide only group pleading and conclusory, generic allegations—which is insufficient as a matter of law to state a claim under the False Claims Act. Further, Relators have failed to identify any specific false statement or incomplete Section 111 report submitted by ***any*** Defendant, much less to plead facts sufficient to show that such statements or omissions were knowing. For all these reasons, Relators' allegations do not come close to stating a claim.

The district court also correctly dismissed the claim for conspiracy to make a reverse false claim (Count II), as Relators failed to plead any agreement with ISO to defraud the government. As the court observed, identifying a contractual relationship is not enough by itself to plead a conspiracy to commit fraud. And alternatively, this Court may also affirm the dismissal of this claim under the public disclosure bar. The

alleged fraud underlying Count II is the same as the alleged fraud that the court found was previously disclosed, and Relators did not "materially add" to those allegations simply by layering on a new defendant (ISO) and a new legal theory (conspiracy).

Lastly, the district court did not abuse its discretion in dismissing Relators' Second Amended Complaint with prejudice and in denying their post-judgment request to file yet another amended pleading. Relators have long been on notice of the deficiencies in their claims, and they had ample opportunities to cure them. Indeed, Relators filed their Second Amended Complaint in response to a motion to dismiss that pointed out these very same deficiencies. Yet they did not make even a bare request to amend their complaint until after final judgment. The court was well within its discretion to deny Relators' post-judgment request, especially given its conclusion that Relators acted with "undue delay, bad faith[,] or dilatory motive." Order, R.111, PageID.3421. This Court should affirm the judgment.

# ARGUMENT

## I. This Court should affirm the dismissal of Count I.

### A. The district court was right to apply the public disclosure bar to Relators' recycled allegations of reverse false claims.

The "public disclosure bar" seeks to "snuff[] out parasitic suits" that simply "feed off prior public disclosures of fraud." *United States ex rel. Holloway v. Heartland Hospice, Inc.*, 960 F.3d 836, 851 (6th Cir. 2020) (citations omitted). By statute, a court must dismiss a False Claims Act action if substantially the same allegations were already publicly disclosed, unless the government opposes dismissal or "the person bringing the action is an original source of the information." 31 U.S.C. § 3730(e)(4)(A). Previously filed complaints qualify as public disclosures, whether or not they survived a motion to dismiss. *See*, *e.g.*, *United States ex rel. Maur v. Hage-Korban*, 981 F.3d 516, 520–21 (6th Cir. 2020); *Holloway*, 960 F.3d at 851. Courts routinely dismiss *qui tam* actions where, as here, they contribute nothing to the exposure of the alleged misconduct. *See*, *e.g.*, *Maur*, 981 F.3d at 526 (dismissal is appropriate even when a relator may have added some new details, if it describes essentially the same type of fraud as previously disclosed).

Here, the district court correctly found Relators' allegations substantially the same as those that had already appeared in lawsuits and media reports.

Relators' brief makes two main arguments on this point. First, they argue that their allegations are not "substantially the same" as those in the *Hayes* and *Takemoto* suits because the prior allegations involve a different time period, before the reporting requirements of Section 111 went into effect. Second, they argue that they fit within the definition of "original source" because they allegedly have knowledge that (they say) is independent of the prior disclosures and reveals new fraudulent conduct. Both arguments fail.

### 1. Relators' allegations are "substantially the same" as the allegations in prior lawsuits.

The public disclosure bar applies when a relator's *qui tam* complaint contains allegations that are "substantially the same" as information that was already publicly disclosed. 31 U.S.C. § 3730(e)(4)(A). Allegations are "substantially the same" if the prior allegations revealed "the essential elements of the alleged fraud." *Maur*, 981 F.3d at 523; *Holloway,* 960 F.3d at 851 (substantially the

same allegations have been disclosed "when enough information exists in the public domain to expose the fraudulent transaction") (internal quotations and citation omitted).  The key inquiry is whether the prior disclosures were enough to put the government "on notice of the fraud alleged in the *qui tam* complaint."  *Id.*; *see also*, *e.g.*, *United States ex rel. Osheroff v. HealthSpring, Inc.*, 938 F. Supp. 2d 724, 733 (M.D. Tenn. 2013) (prior disclosure's allegations need not be "exactly what Relators allege," so "long as the government is put on notice to the potential presence of fraud, even if the fraud is slightly different than the one alleged in the complaint") (citing *Dingle v. Bioport Corp.*, 388 F.3d 209, 214 (6th Cir. 2004)).

After a detailed analysis, the district court correctly held that the allegations underlying the "reverse false claim" count were substantially similar to allegations in prior disclosures—specifically, in the *Hayes* and *Takemoto* complaints.  *See* Order, R.102, PageID.2959–76.  The crux of Relators' Second Amended Complaint is that the Insurer Defendants "have failed to report their primary payer status and thus failed to repay conditional payments," "even when [they] learn

that Government Healthcare Programs were owed repayment." *See* SAC ¶172, R.41, PageID.1058. These allegations are nothing new.

For example, the relator in *Takemoto* alleged that Allstate Insurance Company and other insurer defendants "routinely fail[] to repay Medicare conditional payments that they are statutorily required to repay," despite being "aware of their obligations to make such payments, both due to the well-established nature of the MSP statute and because Dr. Takemoto repeatedly contacted Defendants and provided them with a detailed explanation of their rights and liabilities under the MSP statute." *Takemoto* Sec. Am. Compl. ¶¶62, 70–71, R.79-28, PageID.1423–24, 1426.

Similarly, in *Hayes*, the relator alleged that "in a nationwide scheme, [the defendants] knowingly concealed and/or knowingly and improperly avoided or decreased their obligation to pay or transmit money or property to the government by not reimbursing Medicare" and "did not ensure that Medicare was fully reimbursed for the conditional payments Medicare made on the beneficiaries' behalf." *Hayes* Am. Compl. ¶420, R.78-29, PageID.1605–06. An April 4, 2017 Law360

article explains that the 2012 complaint in *Hayes* "accused more than 60 companies of engaging in a nationwide scheme to withhold payments to which Medicare was entitled under the Medicare Secondary Payer Act, in violation of the FCA." R.78-10, PageID.1334.

Relators cannot avoid the similarity between their claims and these disclosures by pointing to the effective date of Section 111's reporting requirements. Their principal argument in this appeal is that the *Takemoto* and *Hayes* complaints concerned conduct in 2010 and earlier, before the relevant Section 111 reporting requirements went into effect. *See* Opening Br. 27–39, 42–43. According to Relators' appeal brief, the Insurer Defendants intentionally failed to comply with those reporting requirements—and thus concealed both the required payments under Medicare and their potential liability for fines under Section 111 itself. *Id.*

There are several problems with this argument. First—and critically—***Relators did not make this argument in response to the motion to dismiss***; they waited until a motion for reconsideration. *See* Order Denying Reconsideration, R.104, PageID.3002–03. The district

court found that this argument "'could, and should, have been made earlier," so it was inappropriate for a motion for reconsideration—and the court rejected it on that basis. *Id.* Relators do not acknowledge this problem, much less explain how it represents an abuse of discretion, as would be required to set the ruling aside. *See supra* at 23. Indeed, this Court has "found issues to be ***waived*** when they are raised for the first time in motions requesting reconsideration." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (emphasis added).

Second, the district court also correctly rejected the argument on its merits, noting that its original dismissal order had relied on the amended complaints from *Takemoto* and *Hayes*, which were both filed in 2014—***after*** the implementation of Section 111's reporting requirements. *See* R.104, PageID.3003. As the court explained, the *Takemoto* amended complaint "expressly" alleged that Allstate Insurance Company had failed to take "'meaningful steps . . . to remedy [its] noncompliance with [its payment] obligations' even after being told about Section 111's effect on reporting requirements and the potential FCA liability." *Id.* (quoting R.78-28, PageID.1423)). The court

continued: "The complaint here barely elaborated on the *Takemoto* allegation of noncompliance and claimed only that Insurer Defendants are allegedly still out of compliance . . . ." *Id.* (citations omitted). Again, Relators do not acknowledge this ruling, and they do not show it was wrong, much less an abuse of discretion.

Indeed, the district court was undeniably ***correct*** when it said the complaint here "barely elaborated on the *Takemoto* allegation of noncompliance." *Id.* The *Hayes* and *Takemoto* amended complaints both discussed Section 111 and its function. *See*, *e.g.*, *Hayes* Am. Compl. ¶¶374–76, R.78-29, PageID.1589–90; *Takemoto* Sec. Am. Compl. ¶¶53–54, R.78-28, PageID.1421. *Hayes* even pointed to the possibility of a $1,000 fine, alleging that "if the Responsible Reporting Entity [i.e., Insurer Defendants] on or after October 1, 2011 does not 'notify' Medicare of the existence of a claim, it 'shall' be subject to a civil fine of $1,000 for every day that it fails to comply with the reporting requirements." *Hayes* Compl. ¶376, R.78-29, PageID.1589–90; *see* Opening Br. 33–34. Relators' Second Amended Complaint does not allege any more facts than that. In fact, most of the Second Amended

35

Complaint is simply a recitation of the legal and regulatory scheme and the requirements of Section 111—all of which is itself a matter of public record. *See*, *e.g.*, SAC ¶¶104–44, R.41, PageID.1043–1051. And while Relators accuse the Insurer Defendants of noncompliance with Section 111, they do not allege any new ***facts*** to support that accusation. Even their baseless accusation that 72% of claims were not reported to CMS (*id.* ¶210, PageID.1068) lacks any specificity—including any basis to allege that the Insurer Defendants knew about those claims and were required to report them in the first place.

As for the two exemplars—the only relevant ***facts*** actually alleged in the complaint—neither pleads a specific instance of noncompliance with Section 111. In the first exemplar, Relators allege that Medicare beneficiary "E.A." was injured in an automobile accident and, in the months following the accident, was given certain medication on at least forty-two occasions. SAC ¶¶227–33, R.41, PageID.1071. Relators allege that Medicare Part B provided payment for twenty-nine of the accident-related medical expenses—and that Allstate Insurance Group (which, again, is neither a legal entity nor a named defendant in this suit)

allegedly did not report E.A.'s identity and claims to CMS or make primary payments related to E.A.'s accident-related care. *Id.* But Relators do not identify any false or incomplete report under Section 111. Nor do they say who filed that report (ISO or one of the Insurer Defendants) or what that entity knew at the time that would have required reporting the claim. And here is the punchline: Relators describe this exemplar as "just one example demonstrating the [Insurer Defendants'] ***regular[] denial of claims for payment***." *Id.* ¶234, PageID.1071 (emphasis added). As in *Takemoto* and *Hayes*, it is the "denial of claims for payment"—not a specific instance of noncompliance with a reporting requirement—that underlies Relators' claim.

Relators' account of exemplar K.S. is even clearer on this point; it does not mention Section 111 at all. *Id.* app. B, R.41, PageID.1089–90. Relators allege that "K.S." was enrolled in a Medicare Advantage plan issued and administered by a private MAO health plan. *Id.* K.S. was injured in an automobile accident and sustained injuries that required medical services. *Id.* The medical providers billed the private health plan for K.S.'s accident-related medical expenses, even though K.S. was

also covered under a no-fault policy through Allstate. *Id.* Relators

contend that "Allstate reported to ISO information regarding K.S.'s

accident and admitted its primary payer status related to payment

and/or reimbursement of K.S.'s accident-related medical expenses," and

yet it "failed to reimburse [the private health plan's] conditional

payments." *Id.* Again, as in *Hayes* and *Takemoto*, the crux of the claim

here is that "Allstate failed to reimburse [an MAO's] conditional

payments." *Id.* **That** claim was undeniably publicly disclosed.

Overlaying a new legal requirement does not change the theory. *See*

*United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1020 (9th Cir.

1999) (finding allegations publicly disclosed because the relator "merely

added a legal name to describe the alleged circle of facts").

Nor does it matter that the complaints in *Takemoto* and *Hayes*

contained only generalized allegations and ultimately did not "pass[]

Rule 9(b) muster." Opening Br. 39–42. Relators have not cited a single

case holding that a prior False Claims Act complaint cannot serve as a

public disclosure if it was ultimately dismissed under Rule 9(b).[4]  Nor would that make sense.  The question for the public disclosure bar is whether the prior disclosure gave the government the information it would need to investigate whatever claim the current *qui tam* complaint is attempting to assert—however general and non-meritorious it might be.  *Holloway,* 960 F.3d at 851 (key inquiry is whether the prior disclosures were enough to put the government on notice "of the fraud alleged in the *qui tam* complaint").  Courts sensibly look to the relator's own complaint "to define the scope of [the] action and to determine whether it was based on public disclosures of allegations or transactions" that are substantially similar.  *United States ex rel. Jamison v. McKesson Corp.*, 649 F.3d 322, 328 (5th Cir. 2011); *see id.* at 330–332 (dismissing case where complaint "contained only general allegations" that were substantially the same as "the public disclosures,

---

[4] As Relators acknowledge, this Court's decision in *Walburn v. Lockheed Martin Corp.*, 431 F.3d 966 (6th Cir. 2005), was about the first-to-file bar, not the public disclosure bar.  *See* Opening Br. 41.  And in any event, that case did not involve a situation where the Relators' own complaint is just as non-specific as the public disclosures were.

despite their generality"). In short, the public disclosure need not be any more detailed or meritorious than the relator's own complaint is.

Relators' allegations here are themselves highly generalized—and the government has long been aware of these same generalized allegations. Like the complaints in *Takemoto* and *Hayes*, Relators' own complaint "merely list[s] a large group of possible defendants" and "indicate[s] generally that they participated in some of the schemes" described. *Jamison*, 649 F.3d at 328, 332. This Court has applied the public disclosure bar in exactly these circumstances. *Id.*

### 2. Relators are not "original sources."

The public disclosure bar does not apply if the relator is an "original source" of the information. The False Claims Act defines an "original source" (in relevant part) as "an individual . . . who has knowledge that is independent of and materially adds to the publicly disclosed allegations . . . and who has voluntarily provided the information to the Government before filing an action under this

section." 31 U.S.C. § 3730(e)(4)(B).[5] The district court here concluded that Relators could not meet this test because they have not demonstrated any "independent" knowledge that "materially adds" to the already-disclosed allegations. *See* Order, R.102, PageID.2976–79.

Relators' principal argument on appeal is that the district court erroneously relied on case law applying the pre-amendment statutory definition of an original source to find that Relators' knowledge— derived from an affiliate—was not "independent." *See* Opening Br. 43– 48. This misses the point. The primary basis for the district court's ruling was that the information Relators say they have—no matter where they got it—did not "materially add" to the prior allegations. Order, R.102, PageID.2978; *see also* Reconsideration Order, R.104, PageID.3004.

On that score, the district court's ruling was undeniably correct. "Materiality in this setting requires the claimant to show [he] had

_____

[5] A relator can also qualify as an original source if, before any public disclosure, he voluntarily disclosed the fraudulent activity to the government. 31 U.S.C. § 3730(e)(4)(B). Relators do not argue that they satisfy this requirement.

information '[o]f such a nature that knowledge of the item would affect a person's decision-making,' is 'significant,' or is 'essential.'" *Maur*, 981 F.3d at 527 (citation omitted). In other words, the relator must bring something to the table that would add value for the government. *Id.*

The only information Relators say they "materially added" has to do with the requirement to submit Section 111 reports, for which at least some of the Insurer Defendants have contracts with ISO. Opening Br. 47–48. But the requirement to submit Section 111 reports could not have come as news to the government—nor could the possibility of noncompliance. As discussed above, Relators have not added any specific allegations about any intentional refusal to comply with the reporting requirement. They do not identify any instance where a specific Section 111 report submitted through ISO was false or incomplete, much less knowingly so. Further, as discussed below, they have not made any relevant allegations about ISO other than that some Insurer Defendants contract with ISO for some aspects of their Section 111 reporting. And they certainly do not point to any situation for which a fine by CMS is likely or imminent.

Nor do the exemplars materially add anything. The Court addressed this very issue in *Maur*. In that case, prior disclosures had already alleged a practice of submitting claims to Medicare for unnecessary procedures, and this Court found that a relator did not materially add anything when it merely cited "nine additional patient examples." 981 F.3d at 527. There was "'nothing significant or new'" about these examples, so they were not information of "'such a nature that knowledge' of it 'would affect' the 'government's decision-making.'" *Id.* at 528 (citations omitted); *see also United States ex rel. Rahimi v. Rite Aid Corp.*, 2019 WL 10374285, *6 (E.D. Mich. 2019) ("Relator's specific examples of Defendant's implementation of the scheme . . . do not materially add to the public disclosures."), *aff'd in Rahimi*, 3 F.4th at 831 (same principle).

Merely adding details or additional examples—as Relators do here—does not materially add to publicly disclosed allegations. *Maur*, 981 F.3d at 526. The district court was right to hold that Relators do not qualify as an original source.

**B.    This Court may also affirm the dismissal of Count I on the ground that the allegations are insufficient to state a claim.**

This Court may also affirm the dismissal of Count I on an alternative ground that the district court did not need to reach: Relators have failed to provide sufficient factual allegations to state a claim against any Insurer Defendant.

Complaints under the False Claims Act must satisfy the heightened pleading requirements of Rule 9(b).  *United States ex rel. Ibanez v. Bristol-Myers Squibb Co.*, 874 F.3d 905, 914 (6th Cir. 2017). As a result, Relators were required to plead with particularity that each Insurer Defendant either (1) "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to an obligation to pay or transmit money or property to the Government"; or (2) "knowingly conceal[ed] or knowingly and improperly avoid[ed] or decrease[d] an obligation to pay or transmit money or property to the Government."  31 U.S.C. § 3729(a)(1)(G).  To state such a claim, the complaint must (1) plead "enough facts [taken as true] to state a claim to relief that is plausible on its face," and (2) "state with particularity"

the circumstances constituting the alleged fraud. Fed. R. Civ. P. 8, 9(b); *Ibanez*, 874 F.3d at 914. For each Insurer Defendant, "pleading an actual false claim with particularity is an indispensable element" of a False Claims Act complaint. *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 501 F.3d 493, 504 (6th Cir. 2007) (affirming dismissal of a false claim count for failure to plead an actual false claim with particularity). The Second Amended Complaint utterly fails to meet this burden.

### 1. Relators cannot rely on "group pleading" to avoid making specific allegations against each Insurer Defendant.

Under Rule 9(b), for each defendant, "[t]he identification of at least one false claim with specificity is an indispensable element of a complaint that alleges a False Claims Act violation." *United States ex rel. Owsley v. Fazzi Assocs.*, 16 F.4th 192, 196 (6th Cir. 2021); *United States ex rel. Winkler v. BAE Sys., Inc.*, 957 F. Supp. 2d 856, 876–77 (E.D. Mich. 2013) (a reverse false claim "requires at least an allegation

that the defendant owed the government a debt at the time of the alleged false statement").

Other than in the two so-called exemplars—which reference the non-existent "Allstate Insurance Group" and Defendant Allstate Insurance Company, respectively—Relators refer only to the Insurer Defendants collectively.[6] Indeed, the complaint does not refer individually to most of the defendants at all, other than to provide basic identifying information (name, address, and licensure status).

This kind of group pleading violates Rule 9(b) and thus provides an independent basis for dismissal. *See United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.*, 342 F.3d 634, 643 (6th Cir. 2003) ("[a] complaint may not rely upon blanket references to acts or omissions by

---

[6] *See, e.g.*, SAC ¶243, R.41, PageID.1073 ("Relator's federal claims arise from Defendants' intentional noncompliance with federal reporting laws and secondary payer laws . . ."); *id.* ¶244, PageID.1073 ("Defendants . . . submitted, and caused to be submitted false records or statements to the Government by way of incomplete and inaccurate Section 111 reporting."); *id.* ¶245(a), PageID.1073–1074 ("Defendants failed to comply with their reporting obligations . . .").

all of the 'defendants'"); *Atlas Techs., LLC. v. Levine*, 268 F. Supp. 3d 950, 964 (E.D. Mich. 2017) (same).

This should come as no surprise to Relators, as similar allegations of fraud against "all" defendants without any specifics were found inadequate, and even sanctionable, in *Hayes* and *Takemoto*. *See, e.g.*, *United States ex rel. Hayes v. Allstate Ins. Co.*, 686 F. App'x 23, 27–28 (2d Cir. 2017) (affirming dismissal with prejudice as sanction for relator's allegation that "all" defendants violated the False Claims Act); *United States ex rel. Takemoto v. Nationwide Mut. Ins. Co.*, 674 F. App'x 92, 94–95 (2d Cir. 2017) (affirming dismissal of False Claims Act claim for similar "group pleading").

As for Allstate Insurance Company, the one exemplar that refers to that entity does not suffice either; the claim against this defendant too depends on the conclusory group pleading that appears elsewhere in the complaint. Relators ***admit*** that Allstate Insurance Company reported K.S.'s accident to ISO. SAC app. B, R.41, PageID.1090. Nowhere in these allegations do Relators identify any false statement or omission about K.S.—either by Allstate Insurance Company itself, or by

ISO on its behalf.  For this claim too, then, Relators rely on the same broad, conclusory statements about "Defendants" and their alleged collective noncompliance and intentional failure to report.  This group pleading problem is enough by itself to provide an alternative basis for affirming the dismissal.

### 2. Relators do not plead any "obligation" owed by an Insurer Defendant "to the government."

Section 3729(a)(1)(G) also requires Relators to plead an "obligation," which this Court has interpreted to mean "a duty to pay money or property."  *Ibanez*, 874 F.3d at 916.  By statute, this duty must be "established."  31 U.S.C. § 3729(b)(3).  "[T]here is no liability for obligations to pay that are merely potential or contingent."  *United States ex rel. Barrick v. Parker-Migliorini Int'l, LLC,* 878 F.3d 1224, 1231 (10th Cir. 2017).  Relators have not identified any such obligation for ***any*** Insurer Defendant, much less for each of them individually.

To start, the allegations here are not sufficient to demonstrate any established obligation to reimburse anyone.  Relators refer to Insurer Defendants as "Primary Plans" to suggest that they automatically have some obligation to pay.  Not so.  The MSP Act provides that the

Secretary of Health and Human Services may make a conditional payment for an item or service covered by Medicare only when the primary payer "cannot reasonably be expected to make payment with respect to such item or service promptly." 42 U.S.C. § 1395y(b)(2)(B)(ii). Then, the primary payer "shall reimburse" the conditional payment only "if it is demonstrated that such primary plan has or had a responsibility to" pay. *Id.* § 1395y(b)(2)(B)(ii). Setting aside the complaint's conclusory reference to "Primary Plans," it pleads no facts supporting an inference that these statutory requirements were met for any particular expense paid by an MAO or the government.

The allegations regarding the exemplars also are insufficient to plead an established duty to pay. Relators do not allege any facts demonstrating that either the non-existent "Allstate Insurance Group" or Allstate Insurance Company was aware of any conditional payments made by Medicare or an MAO for E.A. or K.S., much less that there was ever an established duty to reimburse.

It is not enough for Relators to say that Allstate Insurance Company "reported" information to ISO about the K.S. claim. SAC app.

B, R. 41, PageID.1090.  There are many reasons an insurer may choose to report a claim even when the reporting insurance company may not ultimately be responsible for the given Medicare beneficiary's medical expenses—for example, when there is no finding of liability, or when the medical expenses at issue prove to be unrelated to the accident.  Thus, the mere fact of reporting does not plead an existing "obligation" by the reporting insurance company.  *See, e.g., MSP Recovery Claims, Series LLC v. Hereford Ins. Co.*, 66 F.4th 77, 86 (2d Cir. 2023) ("Upon examination, we conclude that the text of Section 111 is not ambiguous and that a report filed under its provisions does not amount to an admission of liability."); *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, 2021 WL 1164091, *6 (S.D.N.Y. 2021) (rejecting "underlying premise" of MSP Act complaint that "if a claim is reported to CMS, then any medical expense that may be associated with the claim is reimbursable" as "factually inaccurate").

Moreover, the exemplar makes clear that any obligation owed with respect to K.S. would have been owed ***to a private MAO***—not to the government.  SAC app. B, R.41, PageID.1089–90.  When the alleged

obligation is owed to a private entity rather than to the government, there can be no reverse false claim under Section 3729(a)(1)(G). *See United States ex rel. Petras v. Simparel, Inc.*, 857 F.3d 497, 504 (3d Cir. 2017) (dismissing reverse false claim because federally chartered entity, acting as receiver of private entity, "did not qualify as the Government" for purposes of the False Claims Act); *United States ex rel. Adams v. Aurora Loan Servs., Inc.*, 813 F.3d 1259, 1260-61 (9th Cir. 2016) (finding reports to Fannie Mae and Freddie Mac, considered federally chartered private entities, did not give rise to False Claims Act liability); *United States ex rel. Kolchinsky v. Moody's Corp.*, 162 F. Supp. 3d 186, 195 (S.D.N.Y. 2016) (granting dismissal because "[t]he *sine qua non* of a False Claims Act case is that a false claim must be forwarded to the *Government*, not a private entity").

Recognizing this fatal flaw, the complaint contains a brief reference to an "indirect reverse false claim" theory, predicated on the contention that insurers' alleged failures to reimburse MAOs caused "Government Health Programs" to pay "government contractors" more than they otherwise would have paid. SAC ¶16 & n.8, R.41,

PageID.1022–23 (citing *United States v. Caremark, Inc.*, 634 F.3d 808, 815–17 (5th Cir. 2011)).  But even under the Fifth Circuit's decision in *Caremark*, a relator still must plead that a defendant's conduct impaired "an obligation to pay or transmit money or property to the Government."  634 F.3d at 815–16.  There is no such allegation here.  Medicare's payments to MAOs are based on a statutory flat fee, not on any direct, claim-by-claim reimbursement.  *See* 42 U.S.C. § 1395w-23(a)(1)(B).  And even if the lack of reimbursement might theoretically impact an MAO's bid in the next contracting cycle, that still would not constitute an existing obligation—an "established duty"—that any Insurer Defendant owed to the government at the time.  *See Ibanez*, 874 F.3d at 917 (affirming dismissal of a reverse false claim when "relators provide no facts showing defendants were under an affirmative obligation to the government at the time the alleged false statements were made"); *see also Petras*, 857 F.3d at 505–06 (explaining that an "obligation" refers to an established duty "to pay the Government funds" that existed "at the time that the alleged improper conduct" occurred).

Finally, Relators cannot demonstrate an obligation by claiming that "by failing to properly report, Allstate incurred and improperly avoided a $1,000 per claim, per day, penalty." Opening Br. 33; *see also id.* at 34. This is just a legal argument, not a fact; the complaint does not allege that any Insurer Defendant was ever assessed a penalty. Nor is it even ***possible*** for such a penalty to be assessed at this time. The statute provides only that CMS "may" impose penalties of "up to" $1,000 for non-compliance with reporting obligations; there is no automatic fine. 42 U.S.C. § 1395y(b)(8)(E). But CMS has yet to promulgate a rule that would provide for enforcement of this penalty provision, and the government has stated it will not assess any penalties prior to publication of the final rule (which, to date, is prospective only). 85 Fed. Reg. 8793, 8796 (Feb. 18, 2020). Any liability for a fine is therefore pure speculation—not a basis for a reverse false claim. *See United States ex rel. Simoneaux v. E.I. DuPont de Nemours & Co.*, 843 F.3d 1033, 1039 (5th Cir. 2016) (holding that "unassessed regulatory penalties are not obligations under the FCA" and thus impose "no established duty to pay").

### 3. Relators do not identify any specific instance of a false statement or material omission made with scienter.

Mere failures to report, or reporting errors, are not False Claims Act violations. *See, e.g., United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2008 WL 2857372 (D. Idaho 2008), *5, 7 ("*Mason I*") (holding that "violations of laws, rules, or regulations alone do not create a false claim" and that "[i]nnocent mistakes and mere negligence alone do not satisfy the knowledge requirement"); *see also United States ex rel. Hendrickson v. Bank of Am., N.A.*, 343 F. Supp. 3d 610, 635 (N.D. Tex. 2018), *aff'd*, 779 F. App'x 250 (5th Cir. 2019) (dismissing complaint where "Relator's allegations fail[ed] to move the needle from 'innocent mistakes or negligence' to affirmative fraud").

To state a reverse false claim under the first prong of Section 3729(a)(1)(G), Relators must allege that the defendant made a false statement ***knowingly***, "for the purpose of avoiding payment." *Mason I,* 2008 WL 2857372, *11; 31 U.S.C. § 3729(a)(1)(G).

Neither the exemplars nor anything else in the complaint plausibly alleges that any Insurer Defendant knowingly concealed or

avoided an obligation or engaged in any other deceptive conduct.  At most, Relators have made conclusory assertions about reporting deficiencies in general—which does not come close to satisfying the pleading requirements of Rule 9(b).  *See Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (explaining that "[a]t a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, when, where, and how' of the alleged fraud") (quotation omitted).

Further, Relators fail to plead any facts supporting a plausible inference that any Insurer Defendant acted with the requisite scienter.  Under the False Claims Act, "knowingly" requires "actual knowledge," "deliberate ignorance," or "reckless disregard" of the truth or falsity of the information at issue.  31 U.S.C. § 3729(b)(1)(A).  In the context of a reverse false claim, this scienter requirement applies to a defendant's "awareness of *both* an obligation to the United States *and* his violation of that obligation."  *Harper I*, 842 F.3d at 436 (emphasis in original).  Accordingly, unless a complaint alleges "that a defendant knows of, or acts in deliberate ignorance or reckless disregard of, the fact that he is involved in conduct that violates a legal obligation to the United States,

the defendant cannot be held liable" under the False Claims Act. *Id.* at 437 (internal quotation omitted).

Although Rule 9(b) allows a relator to allege knowledge "generally," this does not give the relator "license to evade the less rigid—though still operative—strictures of Rule 8." *Ashcroft v. Iqbal*, 556 U.S. 662, 686–87 (2009). For this reason, courts dismiss False Claims Act complaints where, as here, the relator fails to plead plausible allegations that each defendant acted knowingly. *See, e.g.*, *United States ex rel. Mason v. State Farm Mut. Auto. Ins. Co.*, 2009 WL 2486339, \*6–8 (D. Idaho 2009) ("*Mason II*"); *see also Iqbal*, 556 U.S. at 686–87.

The complaint here does not come close to meeting this burden. Relators' allegations are nothing more than formulaic recitations of the term "knowingly." *See, e.g.*, SAC ¶¶9, 17, 169, 245, 247, R.41, PageID.1019–1020, 1023, 1058, 1073–1074; *see Ibanez*, 874 F.3d at 917 (affirming dismissal of False Claims Act claim where "allegations amount[ed] to nothing more than an impermissible 'formulaic recitation of the elements of a cause of action'") (citation omitted). Relators have

not alleged facts supporting an inference that *any* Insurer Defendant intentionally failed to report a given claim when reporting was required—much less that it knew that Medicare (or even a private MAO) had paid the beneficiary's medical expense under circumstances that would establish an existing duty to reimburse. The dismissal of Count I may be affirmed on this basis as well.

## II. This Court should affirm the dismissal of Count II.

The district court also correctly dismissed Relators' conspiracy claim, concluding that it was devoid of any specific facts identifying an agreement or plan between any of the Insurer Defendants and ISO to violate the False Claims Act. Relators' brief does not provide any basis to set that ruling aside. And here too, there is also an alternative ground for affirmance that the district court did not need to reach: the public disclosure bar precludes this claim as well.

### A. The district court correctly concluded that Relators failed to plead an unlawful agreement or plan between ISO and any Insurer Defendant.

Again, claims under the False Claims Act—including conspiracy—must be pleaded with particularity under Rule 9(b). *Ibanez*, 874 F.3d at 916; *United States ex rel. Dennis v. Health Mgmt. Assocs.*, 2013 WL

57

146048, *17 (M.D. Tenn. 2013) (citing *United States ex rel. Marlar v. BWXT Y–12, LLC*, 525 F.3d 439, 445 (6th Cir. 2008)).  "Under Rule 9(b), general allegations of a conspiracy, without supporting facts to show when, where or how the alleged conspiracy occurred, amount to only a legal conclusion and are insufficient to state a cause of action."  *Dennis*, 2013 WL 146048, *17 (citation omitted).

A conspiracy claim requires facts showing that there was a plan or agreement "to commit a violation of" one or more of the substantive False Claims Act subsections.  *See* 31 U.S.C. § 3729(a)(1)(C); *see also Ibanez*, 874 F.3d at 917.  A civil conspiracy, including one under this provision, consists of "an agreement between two or more persons to injure another by unlawful action."  *U.S. v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991).  What "must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant."  *Id*.  Indeed, even "an agreement that made it *likely* there would be a violation of the FCA" is "not enough" to allege a False Claims Act conspiracy; the alleged

conspiratorial agreement must be "one *designed to* induce the government to pay false claims." *Ibanez*, 874 F.3d at 917 (dismissing conspiracy claim in the absence of a "specific statement showing the plan was made *in order to* defraud the government").

Relators' complaint fails to allege these essential elements at all, much less with the particularity required by Rule 9(b). As the district court explained, "the complaint lacks any facts—even circumstantial facts—that show a plan or agreement to conspire against the government." R.106, PageID.3019.

The court was right to find that the Second Amended Complaint did not contain anything other than "skeletal" allegations relating to ISO and its supposed agreement with the Insurer Defendants. *Id.*, PageID.3018. The complaint fails to plead the existence of an agreement with particularity—including how or when it was reached, the terms of any such agreement, and what its participants intended to achieve. Instead, the complaint simply asserts—in wholly conclusory fashion—that "Defendants engaged in a concerted conspiracy . . . by failing to provide coordination of benefits data" and thus "knowingly

conspired to avoid reporting." SAC ¶¶168–69, R.41, PageID.1057–58.

Such allegations are plainly inadequate. *See, e.g., Winkler*, 957 F.

Supp. 2d at 876 (dismissing conspiracy count where relator never

"attempts to plead any facts in support of such a claim").

As the district court explained, the only connection alleged

between Insurer Defendants and ISO is a contractual one (*see, e.g.*, SAC

¶120, PageID.1046), and "[a] mere contractual relationship does not

lead to the conclusion that Defendant ISO took part in a 'single plan' or

tried to achieve a 'general conspiratorial objective' with [I]nsurer

Defendants." R.106, PageID.3019 (citing *Hooks v. Hooks*, 771 F.2d 935,

944 (6th Cir. 1985)). The absence of any alleged conspiratorial

agreement between ISO and any Insurer Defendant is fatal to Relators'

conspiracy claim. *See Ibanez*, 874 F. 3d at 917 ("the absence of such a

conspiratorial statement . . . renders insufficient the otherwise bare

allegation that there was a FCA conspiracy"); *United States ex rel. Lada

v. Exelis, Inc.*, 824 F.3d 16, 27 (2d Cir. 2016) (affirming determination

that a conspiracy claim was deficient because it "'fails to identify a

specific statement where [defendants] agreed to defraud the government'").

On appeal, Relators do not attempt to explain how their Second Amended Complaint was sufficient on this point. Instead, they point to allegations in their proposed *Third* Amended Complaint, which they submitted after judgment along with a motion to alter and amend. *See* Opening Br. 50–55. For the reasons set forth below (*see infra* Section III), the district court did not abuse its discretion in rejecting this pleading and in denying Relators' request for yet another opportunity to replead. And nothing in the proposed *Third* Amended Complaint can undermine the district court's assessment of the Second.

In any event, Relators have not pleaded an underlying violation of the False Claims Act by either ISO or any Insurer Defendant (*see supra* Section I.B)—a failure that is independently fatal to the conspiracy claim. *See United States ex rel. Crockett v. Complete Fitness Rehab., Inc.*, 721 F. App'x 451, 459 (6th Cir. 2018) ("lack of specification as to the existence of any false claim also preclude[d]" relator's "false-claims-conspiracy count"); *United States v. Wal-Mart Stores E., LP*, 858 F.

App'x 876, 879 (6th Cir. 2021) (conspiracy claim "is derivative of the substantive claims of submitting a false claim to the government or creating a false record"); *United States ex rel. Holbrook v. Brink's Co.*, 336 F. Supp. 3d 860, 873-74 (S.D. Ohio 2018) ("there can be no liability for conspiracy where there is no underlying violation") (quotation omitted). The conspiracy claim fails on this basis as well.

> **B.** **This Court may also affirm the dismissal of Count II on the ground that it is precluded by the public disclosure bar.**

There is another, independent basis for rejecting Relators' conspiracy claim: it too is precluded by the public disclosure bar.

Like others before them, Relators in this case insist that their allegations support an industry-wide conspiracy. In conclusory fashion, they insist that "Defendants engaged in a concerted conspiracy . . . by failing to provide coordination of benefits data," and that they "knowingly conspired to avoid reporting." SAC ¶¶168–69, R.41, PageID.1057–58. These are substantially the same allegations as the industry-wide scheme that the relators alleged in *Hayes* and *Takemoto*. For example, the *Hayes* complaint alleged that dozens of companies

engaged in a concerted, "nationwide" scheme to evade payments under the MSP Act. *See Hayes* Am. Compl. ¶420, R.78–29, PageID.1605–06 ("Defendants have, in a nationwide scheme, knowingly concealed and/or knowingly and improperly avoided or decreased their obligation. . . by not reimbursing Medicare[.]").

It makes no difference that the current complaint also asserts a separate count for conspiracy. The prior public disclosures revealed "the essential elements of the alleged fraud" and were enough "to expose the fraudulent transaction" alleged in Relators' complaint and put the "government on notice of the fraud alleged in the *qui tam* complaint." *Maur*, 981 F.3d at 523 (citations omitted). Simply adding a new count based on the same supporting allegations does not change that analysis. *See Alcan Elec. & Eng'g, Inc.*, 197 F.3d at 1020 (finding relator's allegations publicly disclosed because he "merely added a legal name to describe the alleged circle of facts").

Nor does the addition of ISO change the substance of the claims or "materially add" to the allegations. Again, Relators do not say anything specific about ISO's involvement, other than to say that it contracted to

provide services to the Insurer Defendants (and declined to allow MSP

WB's affiliate to continue to exploit its proprietary database). And in

any event, if a prior disclosure refers to industry-wide conduct, it can

preclude a new *qui tam* complaint even if the new complaint names

different industry participants. *See United States ex rel. Gear v.*

*Emergency Med. Assocs. of Ill.*, 436 F.3d 726, 729–30 (7th Cir. 2006)

(applying public disclosure bar to preclude *qui tam* action where prior

disclosures did not identify specific transactions involving particular

entities sued in *qui tam* action); *see also In re Natural Gas Royalties*

*Qui Tam Litig.*, 562 F.3d 1032, 1041 (10th Cir. 2009) (public disclosures

not naming specific defendants but alleging "large scale" fraud in the oil

and gas industry were sufficient to "set the government squarely upon

the trail of the alleged fraud"); *Gear*, 436 F.3d at 729 ("We are

unpersuaded by an argument that for there to be public disclosure, the

specific defendants named in the lawsuit must have been identified in

the public records."). The public disclosure bar applies as long as the

prior disclosures "alerted the government to the industry-wide nature of

the fraud and enabled the government to readily identify wrongdoers through an investigation." *Jamison*, 649 F.3d at 329.

That is clearly the case here. The prior disclosures of an industry-wide scheme put the government on notice of the alleged fraud and provided the information needed for the government to determine whether to investigate industry participants—both insurers and their service providers alike. This Court can and should affirm the dismissal of Count II on this basis as well.

### III. The district court did not abuse its discretion in dismissing Relators' claims with prejudice and refusing their post-judgment attempt to replead.

Finally, the district court did not abuse its discretion in denying Relators leave to file a Third Amended Complaint—a request they made only after the judgment had been entered. Relators do not acknowledge this basis for the court's ruling. This curious omission leads them to misstate the standard of review: the proper standard is abuse of discretion. *See supra* at 23–24.

Under Federal Rule of Civil Procedure 15(a), after a party has amended its pleading as a matter of course, it may only amend with the

consent of the opposing party or the court's leave. "The right to amend is not absolute or automatic." *Justice*, 2022 WL 2188451, *3; *Dykes v. Finco*, 2021 U.S. App. LEXIS 11792, *10 (6th Cir. 2021) (a litigant "must act with due diligence if it intends to take advantage of the ability to amend pursuant to Rule 15") (citing *U.S. v. Midwest Suspension & Brake*, 49 F.3d 1197, 1202 (6th Cir. 1995)); *Alexander v. Eagle Mfg. Co.*, 714 F. App'x 504, 510 (6th Cir. 2017) (same principle: district court "did not err in denying [plaintiff's] request for leave to amend his complaint" when he "failed to follow the proper procedure for seeking leave to amend").

With this rule in mind, the district court was well within its discretion in concluding that Relators had no right to amend where they failed to seek leave to amend until after the court's judgment. As the court correctly observed, Relators "failed to even make a 'bare request' for leave to amend in their briefs opposing the motions to dismiss." R.111, PageID.3421. This Court has refused to find an abuse of discretion under these very circumstances. *See Justice*, 2022 WL 2188451, *4 ("the Sixth Circuit is clear that a 'district court's dismissal

of a complaint with prejudice' is proper when the prosecuting party

'd[oes] not seek leave to amend or file a proposed amended complaint.'")

(citations omitted); *see United States ex rel. Harper v. Muskingum*

*Watershed Conservancy Dist.*, 739 F. App'x 330, 334 (6th Cir. 2018)

(*"Harper II"*) ("[A] district court does not abuse its discretion by failing

to grant leave to amend where the plaintiff has not sought leave and

offers no basis for any proposed amendment."); *Ohio Police & Fire*

*Pension Fund v. Standard & Poor's Fin. Serv. LLC*, 700 F.3d 829, 844

(6th Cir. 2012) ("[O]ur default rule is that if a party does not file a

motion to amend or a proposed amended complaint in the district court,

it is not an abuse of discretion for the district court to dismiss the

claims with prejudice") (internal quotations and citation omitted).  As

the court astutely observed, "it is not the district court's role to initiate

amendments."  R.111, PageID.3421.

Further, the court did not abuse its discretion in determining that

Relators' post-judgment request for leave to amend constituted evidence

of "undue delay, bad faith[,] or dilatory motive."  R.111, PageID.3421

(quoting *Morse*, 290 F.3d at 800).  Relators have been on notice of the

deficiencies in their claims since at least April 30, 2021, when the then-present Insurer Defendants submitted their motion to dismiss the First Amended Complaint making the same basic arguments. *See* R.28, PageID.691–730; *id*. at n.5, PageID.711 (specifically citing *Hayes* and *Takemoto* as public disclosures). Instead of responding to that motion, they obtained leave to file their Second Amended Complaint. Order, R.35, PageID.870–71. And after receiving the Insurer Defendants' motion to dismiss that new pleading, they did not seek leave to file their proposed Third Amended Complaint until over a year later, after the final judgment dismissed their claims with prejudice. *See* Mot. to Alter or Amend Judg., R.110, PageID.3028–62.

Even now, Relators do not acknowledge—much less defend—their failure to seek an amendment earlier. Nor do they argue that the facts alleged in the proposed Third Amended Complaint were discovered only after the judgment was entered. *See Kienzle v. Gen. Motors, LLC*, 2013 WL 511397, *4, *7 (E.D. Mich. 2013) (denying leave to amend when all facts relevant to the proposed amendment were known when the original pleading was filed); *McNulty v. Arctic Glacier, Inc.*, 2016 WL

68

465490, *23 (E.D. Mich. 2016) (denying leave to amend because, among other reasons, plaintiff "offer[ed] no explanation for his failure to act on" evidence when he discovered it). There is simply no reason for Relators to have waited until judgment was entered to propose an amended complaint containing information that had long been in their possession.

Relators cannot save their case by invoking *Newberry v. Silverman*, 789 F.3d 636 (6th Cir. 2015). *See* Opening Br. 21, 56–58. Unlike here, the plaintiff in *Newberry* had filed only one complaint before this Court found that the district court erred in dismissing the complaint with prejudice. In addition, this Court noted that the plaintiff had filed a 10-page affidavit in support of his opposition to the defendant's motion to dismiss—an affidavit that went "into significantly greater detail" regarding the alleged fraud than the complaint did. *Id.* at 645. This Court found that the affidavit, "which was before the district court at the time it dismissed [plaintiff's] case, strongly suggests that [plaintiff] could amend his complaint to include allegations going into a similar degree of detail, which would likely meet the

requirements of Rule 9(b)." *Id.* Here, in contrast, Relators offered their proposed Third Amended Complaint only after multiple rounds of amendment and motion practice, and the court rejected it on that basis—not based on any assessment of whether the new allegations would have been sufficient to state a claim. *Newberry* gives this Court no basis to find an abuse of discretion.

The district court found Relators' "post-dismissal endeavor" to seek yet another amendment "strikingly reminiscent of the notorious litigation strategy employed by other MSP entities with which MSP is affiliated." R.111, PageID.3422. The court noted that MSP-Recovery-related entities routinely "'throw their allegations into as many federal courts as possible and see what sticks.'" *Id.* (quoting other district court decisions in MSP Recovery cases). The court here acted well within its discretion in denying Relators "'[y]et another opportunity to cure deficiencies in [their] allegations.'" *Id.* (same).

## CONCLUSION

Relators have not provided this Court with any reason to disturb the district court's rulings. The judgment should be affirmed.

Respectfully submitted,

By:   /s/ Linda T. Coberly

STEVEN M. LEVY                          LINDA T. COBERLY
Dentons US LLP                          Winston & Strawn LLP
233 S. Wacker Drive, Ste. 5900          35 W. Wacker Drive
Chicago, IL 60606                       Chicago, IL  60601
(312) 876-8000                          (312) 558-5700
steven.levy@dentons.com                 lcoberly@winston.com

FRED K. HERRMANN (P78874)               *Counsel for Insurer Defendants*
Kerr, Russell and Weber, PLC
500 Woodward Avenue, Ste. 2500
Detroit, MI 48226-3427
(313) 961-0200
fherrmann@kerr-russell.com


August 16, 2023

# CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), undersigned counsel certifies that I have complied with the above-referenced rule, and that according to the word processor used to prepare this brief, Microsoft Word, this brief contains 12,853 words, excluding the parts of the document exempted by Fed. R. App. P. 32(f), and therefore complies with the type-volume limitation of Rule 32(a)(7)(B).

Moreover, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in proportionally spaced typeface using Microsoft Word software in Century Schoolbook 14-point font in text and footnotes.

By:   <u>/s/ Linda T. Coberly</u>

LINDA T. COBERLY
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601
(312) 558-5700
lcoberly@winston.com

*Counsel for Insurer Defendants*

# CERTIFICATE OF SERVICE

I, Linda T. Coberly, an attorney, certify that on this day the foregoing Brief for Defendants-Appellees was served electronically on all parties using the appellate CM/ECF system, and service will be accomplished on the following parties via CM/ECF:

SHEREEF H. AKEEL (P54345)
ADAM S. AKEEL (P81328)
SAMUEL R. SIMKINS (P81210)
Akeel & Valentine, PLC
888 West Big Beaver Road,
Ste. 350
Troy, Michigan 48084-4736
(248) 269-9595
Shereef@akeelvalentine.com
Adam@akeelvalentine.com
Sam@akeelvalentine.com

JOHN W. CLEARY
RYAN H. SUSMAN
MSP Recovery Law Firm
2701 S. Le Jeune Road, 10th Floor
Coral Gables, Florida 33134
(305) 614-2222
jcleary@msprecoverylawfirm.com
rsusman@msprecoverylawfirm.com
serve@msprecoverylawfirm.com

J. ALFREDO ARMAS
Armas Bertran Zincone
2701 South LeJeune Road, 10th Floor
Coral Gables, Florida 33134

(305) 461-5100
alfred@armaslaw.com

Dated: August 16, 2023

By: /s/ Linda T. Coberly

LINDA T. COBERLY
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL  60601
(312) 558-5700
lcoberly@winston.com

*Counsel for Insurer Defendants*